16064

CHATMAN v. JOHNNY J. JONES EXPOSITION, INC.

(47 S. E. (2d) 302)

*Mr. J. LaRue Hinson,* of Greenville, for Appellant,

*Messrs. Hoke B. Black,* of Greenville, and *Williams & Felton,* of Spartanburg, for Respondent, 

April 5, 1948.

OXNER, Justice:

This action was brought by appellant, Ida Mae Chatman, a Negro woman who owned and operated a hotel at Gulfport, Mississippi, to recover from respondent, Johnny J. Jones Exposition, Inc., the value of board and lodging and various articles of personal property alleged to have been furnished between January and April, 1947, at the request of respondent, to a colored attraction known as Georgia Minstrels or Brownskin Vanities, and to also recover the amount which appellant claims was advanced by her to said minstrel for traveling expenses. Respondent denied in its answer that it ever authorized the incurring of the obligations mentioned and alleged that said minstrel was owned by one Clifford Houser of Gulfport, Mississippi, who operated same not as its agent but as an independent contractor.

During the trial of the case respondent contended that a certain contract which it entered into with Houser on January 31, 1947, created the relation of independent contractor. Appellant contended that this contract created the relation of principal and agent and also offered evidence apart from the contract tending to show that respondent through its agents

both authorized and ratified the incurring of the obligations set forth in the complaint. The Court below accepted appellant's construction of the contract and charged the jury that it created as a matter of law the relation of principal and agent. The trial resulted in a verdict in favor of appellant for the sum of $1,964.88. On motion of respondent, a new trial was granted upon the ground that the Court erred in its construction of the contract and that the jury should have been instructed that the contract alone was insufficient to establish agency. The trial Judge took the view that although there was other evidence of agency and also evidence of ratification, the jury might have been misled by the erroneous instruction given as to the relation created by the contract itself. This appeal is from the order granting a new trial and the sole question for determination is the nature of the relation created by the contract above mentioned.

Respondent conducts shows in various states. The minstrel in question was composed of twenty-five or more members and a full working crew to erect, maintain and unload all paraphernalia. Under the terms of the contract with Houser, respondent agreed to "book" said attraction for a period of twenty-five weeks and during its connection with respondent's show to provide facilities for transportation and furnish tickets and ticket takers. Houser represented that said minstrel would "be up to the standards" of the Johnny J. Jones Exposition, and agreed to "give performances at such places and times as may be designated by" respondent, "under the direction of" respondent, and during the period of the contract "to abide faithfully by the regulations issued by" it in the management of the Exposition. All paraphernalia used in connection with said minstrel was to be furnished by Houser, who was to pay the salaries of all employees and other operating expenses. Houser agreed to assume all liability for any damage to person or property arising from the operation of said minstrel, including any claims on account of injuries to his employees. It was further stipulated that respondent was not to be responsible for

any debts incurred by Houser in connection with the operation of said minstrel and assumed no liability for "social security, unemployment compensation or business privilege taxes or workmen's compensation insurance, or Federal, state, county or local taxes." Houser agreed to accept all passes issued to his attraction by respondent. He further agreed "to subscribe for all of his employees to the medical department furnished" by respondent and to pay all such fees for said employees. The contract provided that either party should have the right to terminate same upon giving two weeks notice in writing to the other. Under the terms of the contract, after "all tax monies and insurance monies" were deducted from the gross receipts, respondent was to receive forty per cent and Houser sixty per cent, except for "special events and fairs" when the proceeds were to be equally divided. Settlements were to be made daily. It was further stated in the contract that the minstrel was to be operated by Houser as an independent contractor and that it was not the intention of the parties to create a partnership relation.

What relation was created by the above contract? Respondent asserts that it was that of independent contractor which was the view finally accepted by the Court below. Appellant contends that this contract created the relation of principal and agent. There is another possible construction advanced by neither of the parties which is that respondent and Houser were engaged in a joint adventure. These three relations are not always easy to distinguish and there is no inflexible criterion by which they may be differentiated. Generally, however, the relations of independent contractor and an agent are distinguished "by the extent of the control which the employer exercises over the employee in the manner in which he performs his work. Where the will of the employer is represented only in the result, and not in the means by which it is accomplished, and the employer retains no control over the employee as to the manner of means of accomplishing the desired result, the employee is an inde-

pendent contractor, and he, and not his employer, is responsible for his own acts and contracts, and the relation is not changed by the employer's reservation of the right of supervision and approval. Where one who performs work for another represents the will of that other, not only as to the result, but also as to the means by which the result is accomplished, he is not an independent contractor but an agent; and the relationship is one of agency when the employer reserves control and an interest in the performance of the work other than the finished product, or where the contract shows a recognition of the responsibility of the employer for obligations incurred by the other party." 2 C. J. S., Agency, § 2(d). Also, see 2 Am. Jur., Agency, Section 8, page 17; 27 Am. Jur., Independent Contractors, Sections 2, 5, 6 and 7; Restatement of the Law of Agency, American Law Institute, Section 220, page 483, where various elements which should be considered in determining the relation of independent contractor are succinctly enumerated.

During oral argument of this case appellant's counsel stated that he did not contend that respondent and Houser were partners or engaged in a joint adventure and apparently no such contention was made in the Court below. In other words, it is not sought to hold respondent liable on the theory that each of the parties to the contract was the mutual agent of the other with respect to the operation of the minstrel. Hence we are not called upon to determine the difficult question of joint adventure. The only question necessary for us to determine is whether, as appellant contends, this contract created the ordinary relationship of principal and agent. We do not think it does.

Houser was engaged in a distinct and independent business which required skill. This minstrel was his creation and doubtless developed through many weeks of application; thought and practice. He furnished the instruments and paraphernalia. The personnel was selected and paid by him and was under his control. The minstrel was not organized

or assembled as a part of respondent's Exposition. It was a completed unit before respondent entered into the contract with Houser. Respondent had no right to hire or discharge any member of the minstrel and it is difficult to see how there could be very effective control without such right. He could not change or modify the various acts and could not direct any entertainer as to what he should do. There was no right of mutual control over the subject matter of the enterprise. Respondent only contracted for the finished product. Either party had a right to terminate the connection upon two weeks notice.

Appellant calls our attention to the terms of the contract which required Houser to keep the minstrel "up to the standards of the Johnny Jones Exposition", to give performances "under the direction" of and "at such places and times" as respondent designated, and "to abide faithfully by the regulations issued by" respondent "in the management of their Exposition." It is said that the control reserved to respondent under these provisions negatives the independence of the contract and makes Houser a mere agent. But we do not think these provisions gave respondent control with respect to the details of the performance. The mere fact that one of the contracting parties is empowered to give general directions as to what is to be done without control over the methods or means of doing it does not necessarily have the effect of creating the relation of principal and agent or master and servant. 27 Am. Jur., pages 490 and 491; Annotation 20 A. L. R., beginning on page 697. Provisions of the nature here involved are frequently contained in contracts dealing with various types of work. Respondent was not empowered to dictate the means or method to be employed in the operation of this minstrel. It was probably essential to the orderly and efficient conduct of respondent's business that it should be vested with some degree of general supervision over the minstrel and that there should be certain general regulations governing all phases of the entertainment given in connection with its Exposition. Such

requirements would ordinarily be imposed upon independent contractors and employees and agents alike. It was also quite natural for respondent, in order to coordinate the entire show and meet its scheduled itinerary, to reserve the right to designate the time and place for the performance of said minstrel. The general direction and supervision reserved to respondent related only to the result to be attained.

It was stated in *Rogers v. Florence Railroad Co.*, 31 S. C. 378, 9 S. E. 1059, 1062, that the reserved control, to have the effect of making the relation that of employer and employee, "must be both general and special, and not only as to what work shall be done, but also how it shall be done." In both this case and in the recent case of *McDowell et al. v. Stilley Plywood Co. et al.*, 210 S. C. 173, 41 S. E. (2d) 872, it was held that the relationship created was that of independent contractor and not employer and employee, although the right of control and direction reserved in the contracts involved was equally as great as that reserved to respondent in the instant case.

Finally, appellant argues that the requirements that Houser subscribe for all of his employees to respondent's medical department and accept all passes to his attraction issued by respondent tend to establish the relationship of principal and agent. We do not think that these provisions have any material bearing on the relationship of the parties. The record does not disclose the nature or character of the medical department operated by respondent. It is a very frequent practice on the part of the managements of carnivals, circuses and shows to issue some free passes to all entertainment features given in connection with such enterprise. There is no reason to assume that respondent would abuse this privilege. To do so would have the effect not only of reducing Houser's income but also that of respondent.

Appellant has cited the following cases from other jurisdictions: *In re Rogavin's Claim*, 259 App. Div. 774, 18 N. Y. S. (2d) 302; *In re Dellapenta*, 261 App. Div. 863, 24

N. Y. S. (2d) 748; *Steel Pier Amusement Co. et al. v. Unemployment Compensation Commission et al.*, 127 N. J. L. 154, 21 A. (2d) 767. It was sought in these cases to impose liability under certain State Unemployment Compensation Acts and there was involved the relationship between an orchestra leader and the members of his orchestra on the one hand and the establishment for which they played on the other. A careful examination discloses that these cases are distinguishable from the instant case under the facts. The contract before us is more similar to those found in *In re Radio City Music Hall Corporation*, 262 App. Div. 593, 31 N. Y. S. (2d) 284, and *People v. Greer*, 53 Cal. App. (2d) Supp. 841, 128 P. (2d), 207, 213, where it was held that the members of the orchestra were not employees of the establishment at which they played. The New York decisions relied on by appellant are reviewed and distinguished by the California Court in *People v. Greer*. The Court there also made the following comment on the New Jersey case cited by appellant: "It is also of interest that the Supreme Courts of Nebraska and of Wyoming, in passing upon the same questions involving orchestras and in construing statutes identical with that of the State of New Jersey, came to a contrary opinion. These cases are *Hill Hotel Co. v. Kinney*, 1940, 138 Neb. 760, 295 N. W. 397; and *Unemployment Comm. v. Matthews*, 1941, 56 Wyo. 479, 111 P. (2d) 111." An extended review of other cases along this line, both from the State and Federal Courts, will be found in the recent case of *Seattle Aerie No. 1 of Fraternal Order of Eagles v. Commissioner of Unemployment Compensation and Placement,* 23 Wash. (2d), 167, 160 P. (2d) 614, 163 P. (2d) 921.

The order appealed from is affirmed and the case remanded for a new trial in accordance with said order.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.