16393

### NORRIS v. BRYANT *ET AL.*
(60 S. E. (2d) 844)

*Messrs. Julien D. Wyatt* and *Felix L. Finley, Jr.,* of Pickens, *for Appellant,*

*Messrs. Haynsworth & Haynsworth,* of Greenville, and *W. G. Acker,* of Pickens, *for Respondents,*

July 28, 1950.

OXNER, Justice.

This action was instituted by appellant, plaintiff below, in December, 1945, to recover damages for personal injuries received on April 13, 1945. About noon on that date he, along with several other workmen, was riding in a truck belonging

to Pickens County with his legs hanging over the left side. At a point on Highway 178 about three miles north of Pickens, this truck was met on a bridge by a truck and trailer driven by Roy Bryant. Appellant's left leg was severed as the two vehicles passed.

Appellant alleged in his complaint "that the defendants Roy Bryant and Taft Chappell variously and interchangeably operated said truck, but that the operation thereof was in and about the sole business of the defendant, Poinsett Lumber and Manufacturing Company, and that the said defendant corporation was the actual operator of the defendant truck through S. C. Grant, Roy Bryant and Taft Chappell as its agents and servants." Judgment was sought against Bryant, Chappell, Grant, and the Poinsett Lumber and Manufacturing Company on account of the negligent and reckless operation of said truck. The truck and trailer driven by Bryant were attached and thereafter released upon bond being furnished in the sum of $1,000.00.

The defendants filed separate answers. Each contained a general denial and a plea of contributory negligence and recklessness. It was further alleged that Bryant was driving said truck as an employee of Chappell who was hauling logs as an independent contractor under a contract with Grant, and that Grant was an independent contractor operating under a contract between him and the Poinsett Lumber and Manufacturing Company.

Subsequent to the commencement of this action, appellant, as an employee of Pickens County, was awarded the sum of $6,647.23 by the Industrial Commission to cover disability, disfigurement and medical expenses. This award was duly paid from the State Workmen's Compensation Fund. The complaint was accordingly amended by alleging that the action was brought for the benefit of the State of South Carolina to the extent of the amount of said award and for the benefit of appellant for any amount recovered in excess thereof.

The case was tried in July, 1948. At the conclusion of all the testimony the Court granted a motion for a directed verdict as to the corporate defendant and Grant upon the ground that these two defendants were independent contractors. The jury returned a verdict against Chappell and Bryant for actual damages in the sum of $3,000.00 and punitive damages in the sum of $5,000.00. Bryant and Chappell have not appealed. Appellant, plaintiff below, has appealed from the judgment of the Court in directing a verdict in favor of Grant and the Poinsett Lumber and Manufacturing Company. He also contends on this appeal that the Court unduly restricted the pre-trial examination of the defendants and that there was error in the exclusion of certain evidence.

The primary inquiry is as to the relationship between the various defendants. We shall first determine whether the relation of employer and independent contractor existed between the Poinsett Lumber and Manufacturing Company, hereinafter referred to as Poinsett, and Grant.

Poinsett is a New Jersey corporation. It owns large tracts of timber in the mountains of Pickens and Oconee Counties which are used to supply its sawmill and veneer plant at Pickens. On Febuary 3, 1945, it entered into a rather lengthy written contract with Grant under which Grant agreed to cut all trees of certain specified dimensions, to be marked and designated by Poinsett, from an area of approximately 1,124 acres, and to skid and haul the logs to Poinsett's plant at Pickens. The estimated amount of merchantable timber to be cut was four million board feet which was to be delivered at a rate of not less than 40,000 board feet per week. Grant was required to complete the contract on or before November, 1947. Poinsett reserved the right to limit the cutting and hauling of the timber during a period of not more than three months or to entirely stop same for such length of time, upon giving ten days notice of such intention to Grant, in which event the period for finally completing the contract was to be automatically extended to the extent of the delay caused by such limitation or cessation of the work.

Grant was to be paid for cutting, skidding and hauling said logs at the rate of $23 per thousand board feet. Settlement was to be made weekly. As far as deemed necessary for the protection of the future stand of timber, the plan of logging operations was to be approved by Poinsett. All felling and bucking were to be done according to the instructions by a representative of Poinsett when he deemed such instructions necessary. All trees were to be cut at a stipulated height from the ground. All logs cut were to be hauled within a certain time and as far as practicable in the order in which they were cut. Grant was to be governed solely by Poinsett's "needs and condition of the logs to be harvested". Grant was authorized to build on the lands of Poinsett any necessary camps and roads, but they were to be located and operated to the satisfaction of Poinsett's manager. Grant agreed to maintain the camps, stables and other structures erected by him in a sanitary condition and to burn or remove all rubbish and debris.

While the contract remained in force, Grant agreed to do all in his power to prevent and suppress forest fires on the "contracted areas" and to require his employees, sub-contractors and their employees to do likewise, and to also assist in fighting forest fires on other lands of Poinsett. No payment was to be made for this service in the event that the fire was due to the negligence of Grant or any of his subcontractors or employees, but otherwise Grant was to be paid for this service at the rate prevailing in that vicinity for that kind of work. It was further stipulated: "It is distinctly understood and agreed that all persons so used by the second party (Grant) wherever employed shall be and remain the employees of the second party or his sub-contractors and shall not be deemed employees of the first party (Poinsett)."

It was agreed that from the consideration heretofore mentioned of $23.00 per thousand board feet, that there should be deducted by Poinsett the sum of $1.00 per thousand feet to apply against any insurance payments defrayed by Poinsett, and in addition, that 10% would be retained by Poinsett

pending the completion of the contract for the purpose of insuring the payment of all indebtedness owing by Grant to Poinsett and any sum which Poinsett was required to pay on account of the acts or conduct of Grant or his employees.

The agreement further provided:

"While it is agreed between the parties hereto that the Second Party is and will continue to be an independent contractor during the entire performance of this contract, yet the First Party shall have the right to require satisfactory proof of payment by the Second Party of all moneys owed and payable by him for any labor or services performed or rendered, or for any goods or materials furnished to, or on behalf of, or at the request of the Second Party in connection with his performance of this contract, and to deduct any amount so owed from any amount owing to the Second Party in connection with his performance of this contract at any time, and to pay the same to the party to whom the same may be owed and payable, and any amounts so paid by the First Party shall be considered as being paid to the Second Party, and the Second Party shall so credit such payments, but nothing herein shall be taken to impose upon the First Party any obligations under this contract to make such deduction and payment. All persons performing any labor under this contract shall be employees of the Second Party and not of the First Party and shall be so advised by the Second Party at the time of employment.

"The Second Party must, before any action is taken toward the performance of this agreement, procure a public liability insurance policy and a workmen's compensation liability insurance policy in a company satisfactory to the Workman's Compensation Commission of the State of South Carolina as to coverage and reliability, covering all his employees, sub-contractors, or employees of sub-contractors who are to be used in such work; furthermore during the progress of the work all state and federal laws concerning unemployment insurance, wages and hours, and

Social Security must be conformed to. All log trucks used in the performance of this agreement shall be covered by liability insurance."

There are other provisions in the contract but they are not material to the question before us. We have only undertaken to set out those relevant to the question of whether the contract created the relation of independent contractor.

The Courts have encountered much difficulty in determining whether under various circumstances a person doing work for another was an employee or an independent contractor. It is generally recognized that it is impossible to formulate a fixed or absolute rule applicable to all cases and that each must be determined on its own facts. However, there are many well recognized and fairly typical indicia of the status of independent contractor, even though the presence of one or more of them in a case is not necessarily conclusive. In the Restatement of the Law of Agency by the American Law Institute, Volume 1, Section 220, page 483, various elements which may be considered determining the relation of independent contractor are succinctly stated.

We think the Court below correctly held that the contract in question created the relation of independent contractor. The evidence shows that Grant is a person of substantial means, owning much expensive logging equipment and engaged in that business. He contracted to cut and haul a large quantity of logs at a fixed price. The operation was to cover a period of over two years. Poinsett had no right to terminate the contract as long as Grant fulfilled the conditions and requirements set forth therein. Grant was to furnish his own equipment and to pay all employees and sub-contractors engaged by him. He had the right to control and direct the manner in which the details of the work were to be executed. Poinsett reserved no control over Grant's employees. Grant was to produce a given result and was to determine the means by which such result was to be accomplished.

The foregoing conclusion is fully sustained by the decisions of this Court in *Rogers v. Florence Ry. Co.,* 31 S. C. 378, 9 S. E. 1059; *McDowell et al. v. Stilley Plywood Co., et al.,* 210 S. C. 173, 41 S. E. 2d 872; and *Chatman v. Johnny J. Jones Exposition, Inc.,* 212 S. C. 215, 47 S. E. 2d 302. Hauling contracts of a similar nature have also been held to create the relation of employer and independent contractor in other jurisdictions. *Arkansas-Louisiana Gas Company et al. v. Tuggle,* 201 Ark. 416, 146 S. W. 2d 154; *Marion Machine, Foundry & Supply Co. v. Duncan,* 187 Okl. 160, 101 P. 2d 813; *Bryson et al. v. Gloucester Lumber Co. et al.,* 204 N. C. 664, 169 S. E. 276; *Johnson v. Byrne & Speed Coal Corporation,* 271 Ky. 216, 111 S. W. 2d 671; *Smith Bros., Inc., v. O'Bryan,* 127 Tex. 439, 94 S. W. 2d 145; *Crosby Lumber & Manufacturing Co. et al. v. Durham,* 181 Miss. 559, 179 So. 285, 854; *Burton-Lingo Company v. Armstrong,* Tex. Civ. App., 116 S. W. (2d) 791.

It is argued that under the terms of the contract Poinsett had control over a substantial portion of the work. But it is clear from a consideration of the entire contract that the general direction and supervision reserved to Poinsett related only to the result to be attained and not to the details of the operation. The general control reserved to Poinsett was not nearly as strong as that reserved in the contracts involved in the decisions of this Court heretofore mentioned.

Appellant stresses the fact that Grant was required to carry public liability insurance on the trucks used in the logging operations and workmen's compensation insurance on all of his employees and those of any sub-contractors. While some courts hold that these facts may be considered, an insurance requirement of this nature is not in itself sufficient to change the quality of a contract which otherwise clearly establishes the relation of independent contractor. *Linden Lumber Co. v. Johnston,* Tex. Civ. App., 128 S. W. (2d) 121; 27 Am. Jur., Independent Contractors, Section 23, page 503; Annotation 85 A. L. R.

page 784. These insurance requirements were obviously inserted in the contract as a precautionary measure and from a consideration of public interest.

Finally, our attention is called to the fact that a certain percentage of the consideration was to be retained by Poinsett until the completion of the contract in order to insure the payment of all indebtedness owing by Grant to Poinsett and any claims established by third parties. We cannot say that these provisions negative the independence of the contract.

Appellant also invokes the principle that an employer is liable for injuries caused by the failure of an independent contractor to exercise due care with respect to the performance of work which is inherently or intrinsically dangerous. We had occasion recently to consider this principle in *Allison et al. v. Ideal Laundry & Cleaners,* 215 S. C. 344, 55 S. E. (2d) 281. But we do not think that the work involved in the instant case was of that quality. It is true that a truck negligently operated on the highway is a dangerous instrumentality, but no case has been cited which holds that hauling logs by truck is so inherently dangerous as to make the owner liable for the negligence of an independent contractor. The contrary was distinctly held in *Burton-Lingo Company v. Armstrong, supra,* Tex. Civ. App., 116 S. W. (2d) 791, and *Marion Machine, Foundry & Supply Co. v. Duncan, supra,* 187 Okl. 160, 101 P. (2d) 813.

We find no error on the part of the Court in directing a verdict in favor of Poinsett. We now turn to the question of whether the Court erred in directing a verdict in favor of Grant on the ground that Chappell was an independent contractor.

There was no written contract between Grant and Chappell. Respondents sought to establish the relationship of independent contractor by the testimony of Grant, who is a brother-in-law of Chappell, and by Bryant, the driver of the

truck. Chappell did not testify at the trial. Bryant testified that he was employed by Chappell about three weeks before the accident to drive the truck and was paid $5.00 per day. He said that he received his compensation and all of his instructions from Chappell. Grant testified that he had a verbal contract with Chappell whereby the latter was to furnish a truck and driver and haul logs from the loader to the pond at Poinsett's plant on the basis of $12.50 per thousand feet. He said that the truck was not owned by him; that he had no control over the driver and gave no instructions to him; that he did not carry liability insurance on this truck; and that his *understanding* was that Chappell was an independent contractor. He did not purport to give the substance of the conversation from which the alleged contract arose, but sought to put his own interpretation upon the effect thereof. On cross-examination by appellant's counsel, Grant was unable to recall when Chappell commenced hauling logs but thought that he started more than a week before the accident. He was unable to say how long Chappell hauled logs under the above arrangement. He said that he bought the truck from Chappell about a week after the accident. The following is also taken from his testimony on cross-examination:

"Q. Have you ever paid any bills on that truck prior to the time that you say you took it?

\* \* \*

"A. I can't remember paying any of Chappell's bills on the truck.

"Q. You can't remember? A. I can't remember ever paying any for Chappell.

"Q. But you don't deny it? A. Well, I don't think so.

\* \* \*

"Q. Mr. Grant, how long did you employ Taft Chappell? A. Well, I can't say.

"Q. For how long a period did you employ him; when he went to work, how long was he to work? A. Well, there was not any set time.

"Q. He just worked as long as it suited him? A. As long as it suited him and me, we just had a verbal contract, just our word.

\* \* \*

"Q. When did you enter into the agreement with Chappell? A. I don't remember the date, I don't mind telling, but I don't remember the date.

\* \* \*

"Q. How many trips had Roy Bryant made up there under this contract? A. I can't say that, for I don't know how many trips my own trucks made.

"Q. Was the understanding between you and Chappell that he was to haul any definite amount of timber? A. No, sir.

"Q. Just whenever it suited you or suited him? A. That's right.

"Q. And you would pay him so much a thousand? A. $12-.50 a thousand.

"Q. When he hauled it—just any time he wanted to, he could haul, and there was not any definite amount of timber? A. No, sir, there was no definite amount of timber.

"Q. No definite time? A. He was supposed to go to hauling after we went into this contract, immediately, I don't know the date.

"Q. Taft Chappell didn't haul more than three days, did he? A. I won't say."

The records of the Highway Department show that the truck in question was registered at the time of the accident in the name of one J. L. Jones and was thereafter purchased by Grant on April 20, 1945, or one week after the accident occurred.

The Court below apparently assumed that Grant's testimony, not having been contradicted by any direct evidence, must be taken as true, and held that it established as a matter of law the relation of independent contractor.

The burden of proof was upon appellant to show that Bryant, the driver of the truck, was a servant of Grant but when he established that the truck was being used in the performance of the contract which Grant had with Poinsett, he established a *prima facie* case. It seems to be generally held that where a *prima facie* case of master and servant is made out, and the defendant claims that he is not liable because the work was being done by an independent contractor, the burden is on him to prove such relationship. 27 Am. Jur., Independent Contractors, Section 59, page 538; 57 C. J. S., Master and Servant, § 615 (b), page 396. It has been said that "the facts pertaining thereto being peculiarly within his (defendant's) knowledge, the law and justice, require that he establish the alleged contract to the satisfaction of the jury by the greater weight of the evidence. It would be unfair, and work a hardship, if the burden should be put upon the plaintiff of disproving an alleged contract to which he is an entire stranger." *Embler v. Gloucester Lumber Company*, 167 N. C. 457, 83 S. E. 740, 742. We do not now undertake to determine the correctness of the rule laid down by these authorities. It is sufficient to say that the burden of at least going forward with the evidence on the issue of independent contractor shifted to Grant.

Does the testimony offered by respondents overcome as a matter of law the *prima facie* case made by appellant? Grant, an interested party seeking to escape liability under a claim that Chappell was an independent contractor, alone testifies as to the terms of the alleged contract. It is significant that Chappell, the other contracting party, was not offered as a witness. The fact that Grant's testimony was not contradicted by direct evidence did not have the effect of making it undisputed or of placing the stamp of verity upon it. *Ingram v. Davis*, 131 S. C. 326, 125 S. E. 920; *Green v. Greenville County*, 176 S. C. 433, 180 S. E. 471; *Thompson v. Bearden, Sheriff*, 200 S. C. 519, 21 S. E. (2d) 189. It is clear from the rule laid down in these cases

that the truth or falsity of Grant's testimony, together with all reasonable inferences to be drawn therefrom, should have been submitted to the jury. It was the province of the triers of the facts to pass upon the credibility of his testimony and in doing so, they could take into consideration Grant's interest in the result, the accuracy of his recollection and various other factors.

There is another reason why a directed verdict as to Grant was improper. The testimony of Grant was subject to more than one reasonable inference on the question of whether Chappell was an independenet contractor. It does not appear that hauling was a part of Chappell's regular business. He operated a filling station at Pickens. He was not skilled in or especially equipped for hauling. Grant said he was not a truck driver. Chappell did not undertake to perform a definite part of the contract which Grant had with Poinsett. He did not contract for the completion of any given task. His alleged contract with Grant was indefinite both as to duration and as to the quantity of logs to be moved and was subject to termination by either party at any time. It could be reasonably inferred that through the power to terminate the contract, Grant could control and direct the means and manner of the performance of the work and place Chappell in a position of complete subservience. All of these circumstances, although no one of them is conclusive, tend to negative the independence of the contract and are sufficient to support a relation of mere casual employment. On the contrary, Grant's testimony to the effect that Chappell was to furnish a truck and driver and haul the logs on the basis of $12.50 per thousand feet was some evidence of the relation of independent contractor. The jury might infer that Chappell could determine his own method of loading and unloading, the time that the driver should work, the quanity of logs which should be hauled on each trip and other details of the work. We may add, however, that the fact that Chappell was to be paid by the quantity, rather than by the day or

hour, is not conclusive of the relationship of independent contractor. Numerous employees are so paid in factories and mines. It is not uncommon for laborers on farms to be compensated on this basis. But, of course, the method of payment is an element to be considered along with all the other circumstances. Considering the testimony as a whole, we think it was for the jury to detemine whether or not there was a sufficient group of favorable factors to establish the relationship of independent contractor. The Court erred in holding as a matter of law that Chappell was an independent contractor.

The foregoing conclusions dispose of the primary questions on this appeal. We turn now to certain subsidiary matters.

Appellant contends that the Court erred in excluding testimony as to whether Bryant was a competent truck driver in 1947, some two years after the accident. We are unable to see how this question has any bearing on this appeal. Appellant obtained a judgment against Bryant and Chappell. The issues here are whether Chappell and Grant were independent contractors.

Appellant sought and was granted the right to examine respondents before trial under Chapter 39, Volume I, of the 1942 Code. At this pre-trial examination, the resident manager of Poinsett testified that the written contract with Grant, which he produced, was the only contract his company had with any of the parties; that it had not been supplemented or modified by any subsequent agreement; and that Grant was operating under this Contract at the time of appellant's injury. Grant and Chappell testified as to the contractual relation between them and that at the time of the accident they were operating under said verbal contract. It is now contended that the Court unduly restricted the pretrial examination and that appellant should have been permitted to examine these parties more fully as to the right of control and the control actually exercised

by Poinsett and Grant. While the Court would have been warranted in allowing more latitude in this pre-trial examination, we cannot say that there was an abuse of discretion. Certainly there was no prejudical error in view, of the fact that appellant had full opportunity during the trial to cross-examine Grant and Bryant in reference to all phases of the logging operations.

In June, 1949, approximately a year after the trial, appellant made a motion for a new trial upon the ground of after discovered evidence. His supporting affidavits were largely to the effect that Grant owned the truck, upon which there was liability insurance, and employed Bryant, the driver. Various affidavits showing the facts to be otherwise were offered by respondents. The motion was refused by order dated July 21, 1949, from which appellant has appealed. The appeal from said order was consolidated with the main appeal.

The alleged newly discovered evidence relates solely to the question of whether the driver of the truck was a servant of Grant and in no material respect affected the question of the liability of Poinsett. Since we have held that there must be a new trial as to Grant, it is not necessary to pass upon this phase of the appeal. We have no hesitancy in saying, however, that the motion was properly refused.

The judgment of the Court below in directing a verdict in favor of Grant is reversed and, as to him, the case is remanded for a new trial. The Judgment entered in favor of Poinsett is affirmed.

FISHBURNE, STUKES, and TAYLOR, JJ., and LIDE, Acting Associate Justice, concur.

BAKER, C. J., not participating.