**Edna Mae EUBANKS, Plaintiff,**

v.

**PIEDMONT NATURAL GAS COMPA-NY, Incorporated, a corporation, and Louisiana-Mississippi Pipeline Construction Company, a corporation, Defendants.**

Civ. A. No. 2775.

United States District Court
W. D. South Carolina,
Greenville Division.

Sept. 26, 1961.

E. P. Riley, Richard Riley, Greenville, S. C., Hubert E. Yarborough, Jr., John L. Nettles, Florence, S. C., for plaintiff.

Fletcher C. Mann, Greenville, S. C., for defendant Piedmont.

W. Francis Marion, G. Dewey Oxner, Jr., Greenville, S. C., for defendant La.-Miss. Pipeline Construction Co.

STERLING HUTCHESON, District Judge.

This suit was brought by the plaintiff, Mrs. Edna Mae Eubanks, a resident of Greenville, South Carolina, against the Louisiana-Mississippi Pipeline Construction Company of North Carolina, Incorporated, and Piedmont Natural Gas Company, Incorporated, both of which corporations are residents of other states.

The court has jurisdiction under the diversity statute.

The corporations will be referred to as La.-Miss. and Piedmont, respectively.

The case was tried without a jury. The evidence discloses the following facts:

As its name indicates La.-Miss. is engaged in the construction of pipe lines. Piedmont is engaged in furnishing to consumers natural gas which is conveyed for distribution through pipe lines.

By written agreement dated July 17, 1958, La.-Miss. entered into a contract with Piedmont for the installation of gas mains in various cities serviced by Piedmont, including the City of Greenville, South Carolina. In October, 1959, La.-Miss. commenced the construction of a gas line along Deering Street near the City of Greenville, on which street the plaintiff, Mrs. Eubanks, resided with her husband and children.

On the last mentioned date the work of installing gas mains on Deering Street had been substantially completed and the equipment involved, including a ditch digging machine, had worked along Beacon Street, which intersects Deering at approximate right angles, had crossed Deering Street and late in the afternoon had ceased operations for the day after excavating a ditch for a short distance on the right hand side of Stafford Street, which is a continuation of Deering after its intersection with Beacon.

The basis of this action is an allegation of negligence on the part of both defendants which caused an automobile operated by the plaintiff along Deering Street at the intersection mentioned to fall into a ditch.

Both defendants deny negligence and assert the defense of contributory negligence on the part of the plaintiff.

Piedmont defends further upon the ground that La.-Miss. was an independent contractor for whose torts Piedmont is not responsible.

At the conclusion of plaintiff's evidence both defendants filed motions for directed verdicts. Those motions were overruled; and renewed at the conclusion of all the evidence.

In addition to contending that no negligence had been shown, the defendants insist that the plaintiff failed to prove any causal connection between the occurrence and the disability of which she complains; and that the evidence showed the plaintiff to have been guilty of primary negligence or of contributory negligence.

Piedmont insisted further upon its position that if liability exists it was the liability of La.-Miss. as an independent contractor.

These motions were likewise overruled, the case was argued and a transcript of the proceedings and briefs have been filed. The entire record is now before the court for disposition upon the law and the facts.

From the foregoing it will be seen that the questions for determination may be stated as follows:

1. Were the defendants, or either of them, guilty of negligence proximately causing the injuries received by the plaintiff?

2. Was the plaintiff guilty of primary or contributory negligence?

3. Was there a causal connection shown between the episode involving the fall of the automobile into the ditch and the injuries of which the plaintiff now complains?

4. If the plaintiff is entitled to recover, is Piedmont liable for damages?

Counsel for the plaintiff have filed as a part of their brief a sketch of the area which is attached to and made a part of this opinion.

524

The plaintiff, who is thirty-four years of age, resides on Deering Street. Her husband is employed at the White Horse Mill. There are four children, two of whom are of school age. The plaintiff performs the duties of a housewife and has been quite active physically. She has been driving an automobile since the age of sixteen and has made numerous long trips to such places as Washington, Canada, Charleston, Atlanta and Macon, on which trips she did most of the driving. Since she was sixteen years of age she was employed in mill work until some time after she was married. Since her marriage she has performed her household duties consisting of sweeping, scrubbing and mopping, washing clothes and caring for her husband and children, washing windows, curtains and blinds and other housework.

In addition to these activities she has done house painting, assisted her husband in remodeling a cabin in the mountains, when she sawed and nailed the boards in place, and assisted in installing sheetrock. She testified that she did general carpenter work while her husband was at the mill, and when he was on second shift she worked until 12 o'clock at night. She assisted him in placing roofing on two porches of their residence.

Immediately before the injuries here complained of the plaintiff and her husband laid about 500 cement blocks in a wall on their property line. The plaintiff mixed the cement and carried blocks and cement to her husband, who laid the blocks.

She also engaged in playing ball and other sports with children in a playground project, in which sports she excelled. In addition to these activities she is engaged in religious work, being one of the singers in a trio over radio and at churches in connection with which she also played the guitar.

The injuries of which the plaintiff complains consist of a ruptured disc in the area of her lumbosacral joint.

The evidence discloses that the plaintiff has a history of previous injuries.

In January, 1951, she was in an automobile collision in Georgia which made it necessary that her back be x-rayed.

In October, 1957, she slipped on the floor of her home and sustained a back injury which required hospitalization for sixteen days and treatment, at which time the doctor suspected a possible herniated disc in her lumbosacral joint. At that time it was discovered that one of her legs was one-half inch shorter than the other. Since then she has had several falls.

In August, 1958, she received injuries to her back in an automobile collision, for which she was compensated.

In June, 1959, she was involved in an automobile collision, and in February, 1960, she received injuries while leaving a Yellow Cab, for which a claim was pending at the time this case came to trial.

I have gone into some detail concerning the plaintiff's background activities because of the contention that causal connection has not been shown.

On November 4, 1959, the plaintiff's husband reached home about 4:20 in the afternoon. The plaintiff and her mother left the home on Deering Street in her husband's automobile for the purpose of going to a drug store to obtain a bottle for her baby. To reach the drug store her route was up Deering Street passing the intersection of Beacon and then along Stafford Street. At the time the ditching operations had been concluded on Deering Street, although there were piles of dirt to the plaintiff's left as she proceeded toward Beacon. The ditching machine had completed the excavation work on Beacon Street and across the intersection with Deering.

There is a conflict in the evidence concerning the precise location of this machine at the time. Resolving this conflict it is my conclusion, as stated, that the ditching machine had completed the ditch across Deering Street and had turned up Stafford on the plaintiff's right hand side of Stafford. One of the employees of La.-Miss., B. E. Champion,

was acting as flagman at a point between Beacon Street and the plaintiff's residence. As the plaintiff approached he signalled her to slow down. At that time steel plates had been laid over the excavation where it crossed Deering Street from Beacon. Again there is here a conflict in the evidence. The plaintiff contends that the plates were laid while she waited to cross. The defendants contend they had been laid earlier, probably on the previous day. Considering the hour of the day, which was about the normal time to close down operations for the night and the short distance the ditching machine had proceeded north on Stafford, it is my conclusion that the plates had been placed earlier during the day of November 4. This is of minor importance, however, since it is definitely established that steel plates were across the excavation at the time plaintiff proceeded into the intersection.

After receiving a signal to proceed the plaintiff bore to her right to such an extent that the supervisor of the operations, E. P. Palmer, stopped her and cautioned her against striking the ditching machine. He directed her to turn her wheel to the right and back up in order that the front end of her car would miss the ditching machine. The plaintiff turned her wheel to the left and reversed her gears. The right front wheel fell into the excavation on the plaintiff's right side of Stafford Street. Thereupon several workmen lifted the wheel from the ditch. The plaintiff continued to back her car and righted its direction so as to cross the excavation on the plates and without colliding with the ditching machine.

The testimony of the plaintiff seems confused upon this point. It is her theory that the ditching machine was entering or had entered the intersection from Beacon on her left and had to back up for the plates to be laid. Obviously, if the ditch had not been completed across Deering it would have been to her left and it would have been impossible for the right wheel to be involved. As stated, there is a conflict in the testimony upon this point, but it is my conclusion that it must be resolved in favor of the defendants. Here the probabilities must be weighed. It is not probable that at about 4:30 on a November afternoon a group of workmen engaged in such operations would be occupied in the middle of a street which was not entirely closed to traffic. The employees who testified were experienced, skilled workmen. None of them are now employed by either defendant. They were unanimously in agreement that the operations were being shut down for the night. In fact the operator of the digging machine testified that he was engaged in oiling the machine, which was at a standstill.

This is a situation so normal that it is entitled to considerable weight in viewing the evidence.

Considering the activities of the flagman and of the supervisor in undertaking to direct the plaintiff across the excavation, I find no negligence on the part of the defendants.

Upon the other hand, it seems clear that the plaintiff through failing to follow directions caused the wheel to slip into the ditch, and even assuming that there was primary negligence on the part of the defendants the plaintiff was guilty of negligence which at least contributed to the incident.

In view of this conclusion it seems unnecessary to consider the other questions involved. However, since the entire record is before me I shall proceed to dispose of the other issues.

This brings us to the question of causal connection between the condition of the plaintiff and the incident here involved.

In establishing causal connection expert testimony is relied upon to show the relation between the alleged cause and the result. It is not sufficient for the expert, in this case the doctor, to testify merely that the ailment might or could have resulted from the alleged cause. He must go further and testify that taking into consideration all the data it is his professional opinion that the result

in question most probably came from the cause alleged. See Branch v. Pacific Mills, 205 S.C. 353, 32 S.E.2d 1; Mack v. Branch No. 12, Post Exchange, Fort Jackson, 207 S.C. 258, 35 S.E.2d 838; Hines v. Pacific Mills, 214 S.C. 125, 51 S.E.2d 383, 386. The analysis of prior South Carolina decisions made by Judge Sease in the Hines case appears so apt that it is quoted:

"An analysis of these various decisions, which have dealt with the effect of the medical testimony and of such testimony in relation to lay testimony, seems to me to lead to certain definite conclusions:

"(1) That, where the condition in question is one with respect to which the lay mind can have knowledge, as with respect to whether a person can see or not, as in the Posten & Ballenger cases, that medical evidence is not conclusive if there is lay testimony to the contrary;

"(2) that there are certain fields with respect to which the lay mind is not competent to pass upon, and in such scientific fields reliance must be had upon expert evidence alone;

"(3) that, in any event, where medical evidence is all one way, it must be accepted and cannot be disregarded unless there is competent substantial evidence to the contrary;

"(4) that medical evidence which deals in possibilities only does not create an issue of fact;

"(5) that medical evidence based on a hypothetical question has no value beyond the extent it is predicated upon facts actually proven in the record."

See also Cross v. Concrete Materials, 236 S.C. 440, 114 S.E.2d 828, and Winn v. Peoples Natural Gas Co., 238 S.C. 1, 118 S.E.2d 812.

█ It is true that the existence of a prior illness or injury does not relieve the defendants from the consequences of causing an aggravation of that condition. However, as appears to be clearly established under the law of South Carolina, there still remains upon the plaintiff the burden of establishing causal connection, and the causal connection in a case such as this must be shown by expert medical testimony to the effect that the injuries were most probably caused by the accident.

Dr. Wayne C. Brady was called as a witness by the plaintiff. His testimony is the only medical evidence we have.

I have carefully examined the transcript of the testimony of Dr. Brady. As far as he has gone in testifying his opinion may be summarized in the following questions and answers on direct examination:

"Q. From the history, would you say that you—that Mrs. Eubanks' injury was a competent producing cause of the herniated disc sustained by her? A. All I could say is that it could have caused her difficulty."

Again on page 13 he states in reply to a question from counsel as to whether it could be the competent producing cause of the injury that it could. On cross examination as shown on page 24 Dr. Brady testified that it could have caused the injuries.

█ I do not find any statement from the doctor that the incident *probably* caused the injuries. The testimony here falls within the category described by Judge Sease as follows:

"That medical evidence which deals in possibilities only does not create an issue of fact."

My attention has been called to McCarty v. Kendall, S.C., 120 S.E.2d 860, decided by the Supreme Court of South Carolina on July 6, 1961, which the plaintiff urges in support of her contention. That case was brought under the Workmen's Compensation Act, Code 1952, § 72–1 et seq.

A reading of the opinion reveals that the situation there was different from that in the instant case. Dr. Ledyard, who testified concerning causal connection, in reply to a question on direct examination said: "I would say, to

modify your question slightly, that the immobilization, I would feel, was certainly a large factor in production of the stone, although it may not have been the only factor." The following question and answer also appear: "Q. It would certainly have been a contributing factor to a large degree? A. That is correct. I would feel so."

There was conflicting testimony indicating that the stone may have formed prior to the time of the injury. The court held that the testimony raised an issue of fact for determination by the Industrial Commission as to the presence of a stone when the plaintiff was first admitted to the hospital. When the testimony of Dr. Brady is compared with the medical testimony in the McCarty case, it is readily apparent that the proof in this case falls short of that in the McCarty case and falls short of complying with the rule enunciated by the South Carolina courts in previous cases.

It follows that it is my conclusion that the plaintiff has failed to show causal connection between the trauma alleged and the injuries from which she is suffering.

The remaining issue involves the liability of Piedmont for a tort of La.-Miss.

The contention that Piedmont is liable can be briefly disposed of. Piedmont entered into a contract with La.-Miss., under which contract La.-Miss. agreed to provide a complete installation ready for the transportation of natural gas, for which Piedmont agreed to pay La.-Miss. on a linear foot basis according to the size of pipe installed.

Piedmont was to furnish the pipe, fittings and other equipment to be installed, but La.-Miss. provided all labor, supervision and equipment necessary to complete the work. The workmen engaged on the job were employees of La.-Miss. The only employee of Piedmont who was involved with the operation was an inspector, whose duty was to determine whether the work of La.-Miss. was in accordance with the plans and specifications. The inspector did not undertake to exercise any supervision or control over the employees of La.-Miss. Piedmont also furnished certain signs to be used by La.-Miss. notifying the public of work in progress.

■ In the contract La.-Miss. agreed to indemnify Piedmont for any wrongful acts of La.-Miss. Under this state of facts it clearly appears that La.-Miss. was an independent contractor, as that term is generally understood. Plaintiff advances a theory to the effect that since Piedmont is a public service corporation it cannot contract away its public liability. Under the facts of this case, that contention cannot be sustained. McDowell v. Stilley Plywood Co., 210 S.C. 173, 41 S.E.2d 872; Chatman v. Johnny J. Jones Exposition, Inc., 212 S.C. 215, 47 S.E.2d 302; Norris v. Bryant, 217 S.C. 389, 60 S.E.2d 844.

Rogers v. Florence Railroad Co., 31 S.C. 378, 9 S.E. 1059, seems to be closely in point and perhaps controlling as to the contention that a public service corporation may not contract away its liability for a tort committed by an independent contractor.

■ While there are certain duties of a public service corporation for which it cannot escape liability, the proper rule would seem to be that this principle is applicable to those duties owed the public by the corporation for the performance of which it has been granted a franchise. That is, the rendering of services contemplated by the franchise, the performance of which may be regarded as a part of the consideration for the grant of the franchise.

It follows that Piedmont would not be liable for the negligence of La.-Miss. in the situation here presented.

An order will be entered upon presentation dismissing the complaint.

This opinion is being filed in lieu of Findings of Fact and Conclusions of Law.