**Brittany Necole FULTON by her Parent and Natural Guardian Anita Joanne FULTON, Plaintiff,**

v.

**WESTVACO CORPORATION, Defendant.**

**Geneva FULTON, Plaintiff,**

v.

**WESTVACO CORPORATION, Defendant.**

**Anita Joanne FULTON, Plaintiff,**

v.

**WESTVACO CORPORATION, Defendant.**

Civil Action Nos. 2:94–0975–18 to 2:94–0977–18.

United States District Court, D. South Carolina, Charleston Division.

March 27, 1995.

Alexander B. Cash, Charleston, SC, Joseph F. Kent, North Charleston, SC, Richard Rosen, P. Brandt Shelbourne, Charleston, SC, for plaintiff.

G. Dana Sinkler, Charleston, SC, for defendant.

## ORDER

NORTON, District Judge.

This is an action in tort arising out of an automobile accident between the Plaintiffs and Marvin Britton ("Britton"). Britton worked for the Laurie Ard Logging Company which was cutting and hauling timber for Westvaco Corporation. Plaintiffs have sued Westvaco on the theory that Britton was an employee of Ard Logging which, Plaintiffs allege, was an agent, servant, or employee of Westvaco.

Westvaco has moved for Summary Judgment on the ground that Ard Logging was an independent contractor and, as such, Westvaco is not liable for the torts of Ard Logging's employees. I agree and hereby grant Westvaco's Motion for Summary Judgment.

### SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court must first find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-23 (4th Cir.1990); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. CenTra, Inc.*, 947 F.2d 115, 119 (4th Cir.1991); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356,

89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 2516, 91 L.Ed.2d 202 (1986).

### FACTUAL BACKGROUND

In this case, the facts are not in dispute. Westvaco operates a chip mill in Andrews, South Carolina. In order to supply wood to the mill, Westvaco enters into contracts with independent logging companies. At the time of the Plaintiffs' accident, Ard Logging was operating under one such contract called a Cut & Haul Agreement. Under this Agreement, Westvaco was "entitled to the cutting and hauling of wood on the conditions set forth in [the] Agreement" but had "no right to control the manner of performance by [Ard Logging]." Under the Agreement, Ard Logging agreed to:

- Furnish its own equipment;
- Hire, fire and supervise its own employees;
- Pay its own employees;
- Keep all employee records and make all payroll payments and deductions;
- Set its own schedule of work;
- Be responsible for everything necessary for its performance under the Agreement;
- Obtain and maintain its own insurance, including general liability, public liability, and worker's compensation; and
- Adhere to good forestry practices.

Westvaco paid Ard Logging for wood "by the ton" at the end of each week. Deductions were taken from Ard Logging's compensation for insurance [1] and to repay a bank loan with South Carolina National Bank.[2] Ard Logging chose to have these deductions made and expressly agreed to these deductions each week.

The Agreement was a valid and binding contract. While Ard Logging cut and hauled almost exclusively for Westvaco, it had the right under the contract to work for anyone. Both parties adhered to the terms of the Agreement.

---

**1.** Ard Logging voluntarily obtained insurance from a company that offered Westvaco loggers a group rate.

**2.** Westvaco did not guarantee the loan.

- Ard Logging always supplied all of its own equipment. Ard Logging, for its own convenience, left its equipment at the job site. The vehicle Britton was driving at the time of the Plaintiffs' accident belonged to Ard Logging.
- Ard Logging had eight of its own employees. All of the employees were hired, supervised, disciplined, and fired by Ard Logging.
- Ard Logging paid its employees directly, by check, which the employees picked up from Laurie Ard's home.
- No income or social security taxes were withheld by Westvaco from Ard Logging's compensation.
- Ard Logging withheld taxes for each of its employees.
- Ard Logging had its own bookkeeper.
- Ard Logging acquired insurance through the Davis–Garvin Agency, a company that offered group rates to Westvaco loggers.
- Westvaco did not supervise Ard Logging's operations. A Westvaco representative visited the cut site on occasion to ensure that the wood supplied to the mill complied with contract specifications.
- A safety inspector visited the site where Ard Logging was working on occasion to ensure that the loggers complied with OSHA regulations.
- Ard Logging maintained its own schedule, performing its obligations under the contract at its discretion, whenever it chose.

The facts recited herein are not in dispute and I find that there is no genuine issue as to any material fact.

### ANALYSIS

■ Under South Carolina law, an employer is not liable for the torts of an independent contractor. *Duane v. Presley Construction Company,* 270 S.C. 682, 244 S.E.2d 509, 510 (1978). An independent contractor is one who "contracts to do a piece of work according to his own methods, without being subject to the control of his employer except as to the result of his work." *Bates v. Le-*

*gette,* 239 S.C. 25, 121 S.E.2d 289, 293 (1961). An employee is one who "represents the will of that other, not only as to the result, but also as to the means by which the result is accomplished." *Young v. Warr,* 252 S.C. 179, 165 S.E.2d 797, 802 (1969).

■ In determining the nature of the parties' relationship, South Carolina courts consider a number of factors:

(1) The contract between the parties;

(2) Whether there is direct evidence that the employer had the right to, or did, exercise control;

(3) The method of payment;

(4) Which party furnishes the tools and equipment used by the worker; and

(5) Which party has the right to terminate the relationship?

*Id.* 165 S.E.2d at 805; *Chavis v. Watkins,* 256 S.C. 30, 180 S.E.2d 648, 649 (1971); *Felts v. Richland County,* 299 S.C. 214, 383 S.E.2d 261, 263 (Ct.App.1989); *Crim v. Decorator's Supply,* 291 S.C. 193, 352 S.E.2d 520 (Ct. App.1987).

South Carolina case law is replete with timber cutting and hauling cases which address this specific issue. The case of *Norris v. Bryant,* 217 S.C. 389, 60 S.E.2d 844 (1950), is particularly persuasive because (1) the contract involved in *Norris* contained many of the same provisions found in the Westvaco–Ard Logging Agreement; (2) both cases involve an "employer" who hires an independent contractor to perform cutting and hauling services; (3) both "employers" required the logger to cut trees of certain type and dimensions; (4) both of the independent contractors were paid on a "per foot" or "per ton" basis; (5) both contractors were required to obtain insurance; (6) both "employers" deducted money for insurance payments; (7) both contractors were required to comply with state and federal laws; and (8) both cases involve a third person injured by an independent contractor who seeks to hold the "employer" liable. In addition, *Norris* involved a motion for directed verdict which was granted by the trial judge, Judge J. Robert Martin, Jr., who found the logger to be an independent contractor as a matter of law. This Motion for Summary Judgment

requires that I apply a similar standard of review.

In addition to the *Norris* decision, an analysis of the traditional factors considered by South Carolina courts in determining the character of the parties' relationship compels the conclusion that, as a matter of law, Ard Logging was an independent contractor for Westvaco.

First, considerable weight is given to the contract between the parties. *Young*, 165 S.E.2d at 805; *Deskins v. Boltin*, 317 S.C. 310, 454 S.E.2d 322 (Ct.App.1994) (Davis Adv. Sh. No. 1). All of the terms of the Cut & Haul Agreement reinforce the existence of an independent contractor relationship. Furthermore, the parties conducted themselves in accordance with the contract and did nothing to give rise to an inference that anything other than an independent contractor relationship existed between them. The contract states that Ard Logging is an independent contractor of Westvaco, and the parties conducted themselves accordingly. This factor must be given considerable weight.

■ Second, the right or power to control retained by Westvaco is an "essential criterion." *Young*, 165 S.E.2d at 802. The reserved control must relate "not only as to *what* work shall be done, but also *how* it shall be done." *Id.* 165 S.E.2d at 805 (emphasis added).

In the timber cases, South Carolina's Supreme Court has consistently found that no master-servant relationship exists where the employer's relationship to the worker is limited to the delivery of a commodity under a contract. *See, e.g., Pyett v. Marsh Plywood Corp.*, 240 S.C. 56, 124 S.E.2d 617 (1962); *Norris*, 60 S.E.2d 844; *Miles v. West Virginia Pulp & Paper Co.*, 212 S.C. 424, 48 S.E.2d 26 (1948); *McDowell v. Stilley Plywood Co.*, 210 S.C. 173, 41 S.E.2d 872 (1947). In this case, Westvaco did not have the right to, nor did it, exercise control over the method of performance by Ard Logging. This is expressly stated in the parties' contract.

Nor did Westvaco have control over Ard Logging's employees. Ard Logging was solely responsible for hiring, firing, and supervising its own employees. South Carolina's Supreme Court has held that "it is difficult to see how there could be very effective control" without the right to hire or discharge the employees performing the work. *Chatman v. Johnny J. Jones Exposition*, 212 S.C. 215, 47 S.E.2d 302, 304 (1948). The Westvaco representative who was in closest contact with Ard Logging has testified that he was not allowed to, and did not, exercise any authority over Ard Logging's employees, and further, that he did not even know many of its employees, including Britton.

This lack of control over Ard Logging's method of performance is a second factor that weighs in favor of the conclusion that Ard Logging was an independent contractor for Westvaco.

The third factor to be considered is the method of payment between Westvaco and Ard Logging. In the timber cutting and hauling cases where workers were not paid by salary or wages, the South Carolina Courts have frequently rejected arguments that master-servant relationships exist. In *McDowell*, the worker was paid "per foot" of timber, and the Court held he was an independent contractor. In *Miles*, the worker was paid "by the cord" for such wood as the contractor supplied, and the Court again held the worker was an independent contractor. *See also Pyett*, 124 S.E.2d 617 (where the worker was paid "per thousand feet," the Court characterized the relationship as buyer and seller of a commodity.)

In the case at bar, Ard Logging was not paid a wage or a salary. Westvaco paid Ard Logging based on the number of tons and type of wood delivered. Westvaco did not pay Britton or any of Ard Logging's employees. Westvaco did not know or control how Ard Logging paid Britton or its other employees.[3] Payment to Ard Logging on a "per

---

3. In many cases, the South Carolina Supreme Court has also considered failure to deduct taxes from the earnings of the worker as an indicator that no master-servant relationship exists. *See Young v. Warr*, 165 S.E.2d at 804; *Chatman*, 47 S.E.2d at 302. Westvaco did not deduct taxes from Ard Logging's earnings. Westvaco does deduct income and social security taxes from the earnings of its employees.

ton" basis is the third factor which indicates an independent contractor relationship existed.

The fact that Westvaco did not furnish Ard Logging with any tools or equipment is a fourth factor which indicates an independent contractor relationship. In the timber cutting and hauling cases, the South Carolina Supreme Court has consistently found that the worker who furnishes his own vehicle and equipment is not a "servant." In *Pyett,* 124 S.E.2d 617, and *Norris,* 60 S.E.2d 844, a worker who supplied all of his own equipment was not an employee, but was an independent contractor. In *Miles,* where the employer (1) furnished the worker with a truck; (2) paid for vehicle repairs; (3) carried the truck's insurance; and (4) provided the worker with gasoline ration stamps so he could purchase fuel, the court found that the worker was an independent contractor. In this case, Ard Logging always supplied all of its own tools and equipment.

The fifth and final factor that South Carolina courts consider is whether the employer has the "right to fire" the worker. Where the parties' relationship is defined by contract, the courts have rarely found a master-servant relationship. *See, e.g., Pyett,* 124 S.E.2d 617; *Norris,* 60 S.E.2d 844; *Chatman,* 47 S.E.2d 302. In *Norris,* the court found that the worker was an independent contractor where the principal had no right to terminate the contract as long as the contractor fulfilled the conditions and requirements set forth therein. 60 S.E.2d 844.

In the case at bar, the parties' relationship was governed by contract. The contract was in writing and covered all material terms. Ard Logging agreed to cut and haul a certain specified amount of wood. Upon delivery, Westvaco agreed to pay Ard Logging a certain specified amount per ton. Ard Logging received a check at the end of the week based on the product delivered. Westvaco could not "fire" Ard Logging during the term of the contract. Westvaco's inability to fire indicates that the parties were not involved in a master-servant relationship.

Plaintiffs have argued that Westvaco helped finance Ard Logging's operations. The facts indicate that Westvaco merely assisted Ard Logging in making loan payments to South Carolina National, an independent bank. However, even if Westvaco had financed Ard's operation, under *Miles,* 48 S.E.2d 26, Ard would still be considered an independent contractor. There, the Supreme Court found that even when Westvaco's predecessor provided financing to the wood buyers and leased the equipment to the loggers, the loggers were still independent contractors.

Plaintiffs also argue that the fact that Westvaco deducted liability and worker's compensation insurance payments from Ard Logging's settlement check and remitted them to Davis–Garvin raises an issue of fact regarding Ard's status as an independent contractor. The Supreme Court has twice held that requiring an independent contractor to carry insurance and deducting payments for them does not convert the contractor into an agent. *Norris,* 60 S.E.2d at 848; *Chatman v. Johnny,* 47 S.E.2d at 305. In *Norris,* the court noted that such a requirement was "precautionary" and "in the public interest."

█ Plaintiffs point to the fact that a Westvaco safety inspector and a Westvaco wood buyer visited the cut site on occasion and assert that these facts make the issue of the nature of the parties' relationship a question of fact. The safety inspector who visited the site was ensuring that Ard Logging complied with OSHA. In the case of *Eubanks v. Piedmont Natural Gas Company,* 198 F.Supp. 522 (W.D.S.C.1961), the fact that a company inspector was on the job site full time was insufficient to convert the relationship to master-servant. *Id.* at 528. A Westvaco wood buyer visited the site to ensure that the wood being cut was of the proper type and size such that Ard Logging was in compliance with the terms of the Cut & Haul Agreement. Under South Carolina law, Westvaco's providing general directions to Ard Logging, without any control over the means and methods used by Ard Logging, does not render Westvaco liable for Ard Logging's torts. *Young,* 165 S.E.2d at 805; *Chatman v. Johnny,* 47 S.E.2d at 304; *Norris,* 60 S.E.2d at 848 (1950); *see also Eubanks,* 198 F.Supp. at 528. These inspec-

tions by Westvaco are insufficient to convert the parties' relationship into one of master-servant.

Plaintiffs cite the case of *Gamble v. Stevenson*, 305 S.C. 104, 406 S.E.2d 350 (1991) as authority for the proposition that "if there are any facts tending to prove an agency relationship, the question is one for the jury." In the *Gamble* case, the Plaintiffs injuries were caused by a negligently-placed stop sign. The court stated that: "The contract with Thomas was prepared by Southern Bell. While it states that Thomas is an independent contractor, Southern Bell's own employee, Hendrix, instructed Thomas where to dig the pit and how to replace the sign. Clearly, this rendered agency a jury issue." *Id.* 406 S.E.2d at 352. The facts of *Gamble* are not remotely similar to the facts before this court. Westvaco did not supervise the operation of the Ard Logging truck in any way. No jury question exists as to whether Ard Logging was an agent of Westvaco.

█ Plaintiffs have cited no material facts in controversy which give rise to an inference that Ard Logging's employees were Westvaco's agents and servants. I conclude that, as a matter of law, Ard Logging was an independent contractor for Westvaco and as such, Westvaco is not liable for Marvin Britton's negligence.

## CONCLUSION

IT IS THEREFORE

**ORDERED** that Defendant's Motion for Summary Judgment be **GRANTED**.

**AND IT IS SO ORDERED.**