512 S.E.2d 510

Cecilia CREIGHTON, Appellant,

v.

COLIGNY PLAZA LIMITED PARTNERSHIP, J. Norris Richardson, Lois H. Richardson, J.N. Richardson, Jr., Mary Katherine Toomer, Rainbow's End, Inc., and D & M Landscaping Company, Respondents.

Robert Creighton, Appellant,

v.

Coligny Plaza Limited Partnership, J. Norris Richardson, Lois H. Richardson, J.N. Richardson, Jr., Mary Katherine Toomer, Rainbow's End, Inc., and D & M Landscaping Company, Respondents.

No. 2909.

Court of Appeals of South Carolina.

Heard Oct. 8, 1998.

Decided Nov. 30, 1998.

Rehearing Denied April 10, 1999.

100

Paul H. Infinger, of Dukes, Williams, Infinger & Meeks, of Beaufort, for appellants.

A. Parker Barnes, David S. Black and Mary Grace Georgio, all of A. Parker Barnes, Jr. & Associates, of Beaufort; Cheryl D. Shoun and Charles F. Castner, both of Ogletree, Deakins, Nash, Smoak & Stewart, of Charleston; and Russell S. Stemke, of Pratt–Thomas, Pearce, Epting & Walker, of Charleston, for respondents.

CURETON, Judge:

Cecilia Creighton brought an action for negligence as a result of a slip and fall that occurred on the steps outside of Rainbow's End, a retail establishment in Coligny Plaza on Hilton Head Island. Ms. Creighton's husband, Robert Creighton, also brought an action for loss of consortium. The jury returned a verdict in favor of the defendants. The Creightons appeal. We affirm in part, reverse in part, and remand.

## FACTS

On the morning of July 19, 1990, Cecilia and Robert Creighton drove from Beaufort to Coligny Plaza on Hilton Head Island to go shopping. During the drive, there was a heavy downpour of rain. While the Creightons were eating lunch at a restaurant located in Coligny Plaza, there was another brief, heavy downpour of rain.

After lunch, Ms. Creighton decided to go into Rainbow's End, one of the retail stores in Coligny Plaza. Ms. Creighton had to climb a set of seven wooden steps to enter the store. As Ms. Creighton was leaving the store, she slipped and fell while attempting to walk down the first step.

The entrance steps were covered in the center by a strip of indoor-outdoor carpet, which left a strip of uncovered wood along the outer edge of each step. Beverly Wilburn (Wilburn), the owner of Rainbow's End, installed the carpeting with carpet remnants and glue, and placed a metal trim along the front outer edge of the steps. Wilburn replaced the carpet every one to two years. On each side of the entrance steps were two large palm trees with limbs overhanging the

handrails. Carolina jasmine, a type of vine, was growing along the outer edge of some of the steps and was intertwined with portions of the handrails. Wilburn planted the palm trees and jasmine vine.

The site and building where the fall occurred are owned by Coligny Plaza Limited Partnership (Partnership) and its individual partners, J. Norris Richardson, Lois H. Richardson, J.N. Richardson, Jr., and Mary Katherine Toomer. Rainbow's End leased the property from the Partnership pursuant to a five year written lease which expired on June 1, 1990, before the slip and fall occurred. After the expiration of the written lease, Rainbow's End remained in the building on a month-to-month basis.

D & M Landscaping had a written agreement with the Partnership to provide the landscaping and maintenance at Coligny Plaza.[1] Under the contract, D & M was to maintain a clean, neat appearance at Coligny Plaza by doing things such as mowing the grass, trimming shrubbery, vacuuming streets, blowing off sidewalks, and emptying trash cans. D & M was not responsible for maintaining the carpet on the entrance steps to Rainbow's End. However, D & M was responsible for trimming and maintaining the palms and jasmine.

## STANDARD OF REVIEW

When an action at law has been tried by a jury, the jurisdiction of this court on appeal extends to corrections of errors of law. A factual finding of the jury will not be disturbed unless a review of the record discloses no evidence which reasonably supports the jury's findings. *Townes Associates, v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976).

## LAW/ANALYSIS

### *Bifurcation of Liability and Damages*

■ The Creightons contend the trial court erred in ordering separate trials of liability and damages.

---

1. The unrefuted testimony is that there was a written agreement but that the written agreement could not be found.

■ This issue is not preserved because the trial judge never ruled on the grounds the Creightons raise on appeal. An issue not raised to or ruled on by the trial court is not preserved for appellate review. *Schofield v. Richland County Sch. Dist.*, 316 S.C. 78, 447 S.E.2d 189 (1994).

At the pretrial conference, the Creightons' attorney objected to bifurcation because he did not want the jurors to hear "sterile testimony" alone, given the difficulty proving a slip and fall case. Additionally, he objected to bifurcation because he wanted the trial judge to fully address the discovery abuse allegations. On appeal, the Creightons allege the trial judge failed to exercise discretion, prejudiced the Creightons, and ignored judicial economy by bifurcating the trial. Because the argument presented by the Creightons to the trial court was based on grounds other than those raised on appeal, the issue is not properly preserved.

■ However, even if this issue was preserved, the trial judge did not abuse his discretion in bifurcating the trial. This court must review a trial judge's decision to bifurcate the issues of liability and damages under an "abuse of discretion" standard. *See Keels v. Pierce*, 315 S.C. 339, 433 S.E.2d 902 (Ct.App.1993) (appellate court will not disturb trial judge's ruling on motion to consolidate absent abuse of discretion); *see also Giles v. Parker*, 304 S.C. 69, 403 S.E.2d 130 (Ct.App. 1991) (bifurcation of trial was well within trial judge's discretion).

■ Under Rule 42(b), SCRCP, the court

in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any ... separate issue ... always preserving inviolate the right of trial by jury as declared by the Constitution or as given by a statute of the State.

A trial should be bifurcated only if the issues are so distinct that trial of each alone would not result in injustice. *Fortune v. Gibson*, 304 S.C. 279, 403 S.E.2d 674 (Ct.App.1991). Where evidence relevant to the issues of both liability and damages overlap, bifurcation is inappropriate. *Id.*

The trial judge raised the issue of bifurcation *sua sponte* at a pre-trial hearing on discovery abuse motions almost three weeks before the trial. The trial judge found it would be significantly shorter to try the liability phase of the case separately because of the extensive medical testimony regarding Ms. Creighton's injuries, as well as the numerous discovery problems related thereto. The court also found bifurcation would eliminate the expense of having out of state doctors testify to Ms. Creighton's damages if the jury entered a defendants verdict in the liability trial. Thus, the trial judge ordered bifurcation only after considering convenience, expedition, and judicial economy as required under Rule 42(b). Furthermore, the Creightons cannot show any prejudice resulted from the bifurcation. The medical testimony relating to Ms. Creighton's damages was not necessary to establish liability in regard to the slip and fall. We find no abuse of discretion by the trial judge in bifurcating the trial.

### *Jury Voir Dire*

The Creightons argue the trial court erred by failing to conduct a more extensive *voir dire* examination of four jurors.

The manner and scope of *voir dire* is largely within the discretion of the trial judge. *Crosby v. Southeast Zayre, Inc.*, 274 S.C. 519, 265 S.E.2d 517 (1980); *State v. Middleton*, 266 S.C. 251, 222 S.E.2d 763 (1976); *Norris v. Ferre*, 315 S.C. 179, 432 S.E.2d 491 (Ct.App.1993). On appeal, this court will rely on the judgment of the trial judge who is able to observe the character and demeanor of the jurors, unless the record firmly establishes an abuse of discretion. *See Wilson v. Childs*, 315 S.C. 431, 434 S.E.2d 286 (Ct.App.1993).

Rule 47(a), SCRCP, provides that upon the court's examination of prospective jurors, the court shall ask such additional questions submitted by the parties or their attorneys as it deems proper. If a party is dissatisfied with a trial judge's examination of a juror, the party should move for permission to ask additional questions. *State v. Ivey*, 331 S.C. 118, 502 S.E.2d 92 (1998). The refusal to make an examination of prospective jurors to determine bias or prejudice, when a timely request has been made, constitutes reversible error. *Crosby v. Southeast Zayre, Inc.*, 274 S.C. 519, 265 S.E.2d 517

(1980). However, absent a timely objection to the examination of a juror, the issue is not properly preserved for appeal. *See Ivey*, 331 S.C. 118, 502 S.E.2d 92 (1998).

### *Jurors Carlson and Sampson*

■■■ During jury *voir dire*, juror Don Carlson (Carlson) stated he knew Mr. Richardson (a partner in Coligny Plaza) socially and had done business with him. The trial judge asked Carlson if that would affect his ability to be fair and impartial. Initially, Carlson responded, "I can't honestly say." However, after further questioning, Carlson responded he could be fair and impartial. Ultimately, the Partnership struck Carlson from the jury. Juror Charles Sampson (Sampson) also stated he knew and had done business with Mr. Richardson. The trial judge did not ask Sampson any more questions. The Creightons moved to dismiss Carlson and Sampson because of their relationship with defendant Richardson. The trial judge denied the motion. Although the Creightons requested Carlson and Sampson be dismissed, they did not request further inquiry by the trial court, which is the argument presented on appeal. Thus, the issue is not preserved.

■■■ Even if this issue had been properly preserved, we find nothing in the record to indicate the trial judge abused his discretion during jury *voir dire*. Carlson responded he could be fair and impartial. Although the trial judge did not ask Sampson if he could be fair and impartial, the judge asked the entire jury panel if there was any reason that they could not be fair and impartial. No one responded negatively.

Additionally, the Creightons cannot demonstrate any prejudice from the trial judge's failure to dismiss Carlson and Sampson. Carlson did not sit on the jury because he was struck by the Partnership. Also, the Creightons' objection to these jurors was based on a relationship with Mr. Richardson. The jury was not required to consider liability in regard to Mr. Richardson because the trial judge granted a directed verdict for the Partnership and its individual partners at the close of all the evidence.

## Juror Cole

 Juror Cathy Cole (Cole) informed the trial judge during *voir dire* that her brother-in-law had a restaurant in Coligny Plaza. The trial judge questioned whether that would affect her ability to be fair and impartial. Cole responded it would not. In response to another question, Cole informed the trial judge she had a restaurant and gift shop on Hilton Head Island. The trial judge asked if that would affect her ability to be a fair and impartial juror. Cole responded, "I don't think so."

 The Creightons did not object, nor did they ask the trial judge to further question her. S.C.Code Ann. § 14–7–1030 (Supp.1997), provides that any objection to a juror is waived if not made before the jury is impaneled. A party objecting to a juror after the jury is impaneled must show that he could not have, in the exercise of due diligence, discovered the ground for objection before the impanelling of the jury. *Southern Welding Works, Inc. v. K & S Const. Co.*, 286 S.C. 158, 332 S.E.2d 102 (Ct.App.1985). Thus, this issue is not preserved and the Creightons are barred from raising it for the first time on appeal. *See Smith v. Phillips*, 318 S.C. 453, 458 S.E.2d 427 (1995) (appellate court cannot address issue unless it is raised to and ruled on by trial court).

## Juror Mims

 After the jury was selected and sworn, counsel for the Creightons informed the trial court that Juror Mims's (Mims) husband was a friend and business partner of the Partnership's counsel. Counsel told the court Mims's husband was his CPA and also a shareholder at his hunt club. Counsel assured the court he had no relationship with Mims and no business partnership with her husband. The trial judge asked Mims no further questions. The Creightons did not request any further inquiry.

 Although the Creightons brought this matter to the trial judge's attention, they did not request further examination by the court, which is the issue argued on appeal. Therefore, this issue is not properly preserved. Even so, the Creightons' objection to Mims was untimely because they could have discovered this relationship in the exercise of due

diligence before the jury was impaneled. In the initial *voir dire*, the Creightons could have asked the trial judge to examine the jury panel in regard to business or social relationships with the parties or their counsel. Also, as in the case of Carlson and Sampson, the Creightons cannot show any prejudice because of Mims's relationship with counsel for the Partnership.

## *The Creightons' Motions for Directed Verdict, JNOV, and New Trial*

The Creightons allege error in the trial court's failure to grant their motions for directed verdict, judgment notwithstanding the verdict, and for a new trial. The Creightons contend that Ms. Creighton neither assumed the risk nor was contributorily negligent in regard to the fall.

### *Directed Verdict, JNOV Motions*

When reviewing the denial of a motion for directed verdict or judgment notwithstanding the verdict, this court must consider the evidence in the light most favorable to the non-moving party. *Brady Dev. Co. v. Town of Hilton Head Island*, 312 S.C. 73, 439 S.E.2d 266 (1993). A directed verdict or judgment notwithstanding the verdict should not be granted unless only one reasonable inference can be drawn from the evidence. *Id.* If the evidence as a whole is susceptible of more than one reasonable inference, the case should be submitted to the jury. *Id. Gamble v. International Paper Realty Corp.*, 323 S.C. 367, 474 S.E.2d 438 (1996).

Respondents each pled contributory negligence and assumption of risk as affirmative defenses.[2] The doctrine of contributory negligence acts as a complete bar to recovery if the plaintiff's own negligence contributed to her damages. *Langley v. Boyter*, 284 S.C. 162, 325 S.E.2d 550 (Ct.App.1984), *quashed*, 286 S.C. 85, 332 S.E.2d 100 (1985). A defense based

---

2. This cause of action arose before the abrogation of contributory negligence and adoption of comparative negligence. Thus, contributory negligence and assumption of risk are viable defenses in this case. *See Nelson v. Concrete Supply Co.*, 303 S.C. 243, 399 S.E.2d 783 (1991) (for all causes of action arising on or after July 1, 1991, a plaintiff may recover in a negligence action if his negligence is not greater than that of the defendant).

on the doctrine of assumption of risk requires a showing that the plaintiff (1) has knowledge of the facts constituting the dangerous condition; (2) knew that the condition was dangerous; (3) appreciated the nature and extent of the danger; and (4) voluntarily exposed herself to the danger. *Pryor v. Northwest Apartments, Ltd.,* 321 S.C. 524, 469 S.E.2d 630 (Ct.App. 1996). The defenses of contributory negligence and assumption of risk ordinarily present questions of fact to be determined by a jury and only rarely become questions of law for the court to determine. *Small v. Pioneer Mach., Inc.,* 316 S.C. 479, 450 S.E.2d 609 (Ct.App.1994); *Singletary v. South Carolina Dep't of Educ.,* 316 S.C. 153, 447 S.E.2d 231 (Ct.App. 1994).

Viewing the evidence in a light most favorable to the defendants, there was sufficient evidence to create a question of fact as to whether Ms. Creighton assumed the risk or was contributorily negligent in the slip and fall. When Ms. Creighton climbed the steps to enter Rainbow's End, she noticed the carpet on the stairs was soggy and wet from the rain. In spite of her knowledge the steps might be dangerous because the carpet was worn and wet, Ms. Creighton decided to go down the first couple of steps without holding on to the handrail until she reached a point where she could grab the handrail without touching the palms or stepping on the jasmine. Ms. Creighton further testified she did not know how she fell or what made her fall. She was not looking to see where her foot was. Ms. Creighton's own testimony created a question of fact as to whether she voluntarily assumed the risk or was contributorily negligent in descending the stairs without holding the handrail, knowing it presented a dangerous condition.

### New Trial Motion

The grant or denial of a new trial motion rests within the discretion of the trial judge and will not be disturbed on appeal unless the trial judge's findings are wholly unsupported by the evidence or the conclusions reached are controlled by error of law. *Umhoefer v. Bollinger,* 298 S.C. 221, 379 S.E.2d 296 (Ct.App.1989). In deciding whether to assess error to a court's denial of a motion for a new trial, we must consider the testimony and reasonable inferences to be

drawn therefrom in the light most favorable to the non-moving party. *Id.*

The jury verdict was not against the greater weight of the evidence presented at trial, and nothing in the record suggests the trial court's denial of the motion for a new trial was an abuse of discretion.

### *Partnership's Motion for Directed Verdict*

■ The Creightons argue the trial court erred in granting the Partnership's motion for directed verdict.

■ In a negligence action, the determination of whether a party has a duty to exercise reasonable care for the benefit of another is a question of law for the court. If the court determines there is such a duty, the jury's function is to determine whether a breach of that duty has occurred, resulting in damages. *Miller v. City of Camden*, 317 S.C. 28, 451 S.E.2d 401 (Ct.App.1994).

■ At the close of the evidence, the trial judge directed a verdict in favor of the Partnership and its individual partners. The trial court found that the Partnership owed no duty to Ms. Creighton under *Byerly v. Connor*, 307 S.C. 441, 415 S.E.2d 796 (1992). In *Byerly,* the South Carolina Supreme Court discussed the general rule that when land is occupied by a lessee, in the absence of an agreement to the contrary, the lessor surrenders possession and control of the land to the lessee. Thus, after the premises are surrendered to the lessee in good condition, the lessor is not responsible for hazardous conditions which thereafter develop or are created by a lessee. *See Young v. Morrisey,* 285 S.C. 236, 329 S.E.2d 426 (1985) (lessor owes no duty to maintain leased premises in safe condition); *see also Sheppard v. Nienow,* 254 S.C. 44, 173 S.E.2d 343 (1970) (no legal duty on lessor to keep leased premises in repair absent contract to do so). Therefore, unless the terms of the lease provide otherwise, the Partnership had no duty to maintain the entrance steps while Rainbow's End was in control of the premises.

■ The trial court also correctly ruled the Partnership owed no duty to Ms. Creighton under the terms of the lease. After the termination of a lease, a lessee who continues

to occupy the premises becomes a tenant at will not bound by the terms of the prior lease unless there is a new agreement to the contrary, either express or implied. *Townsend v. Singleton*, 257 S.C. 1, 183 S.E.2d 893 (1971).

Under the lease, the lessee was responsible for maintaining the area on and around the entrance steps.[3] The lease expired on June 1, 1990, before Ms. Creighton's slip and fall occurred.[4] Rainbow's End remained on the property after the termination of the lease with the Partnership's consent. Although the lease did not address continued occupancy after the lease expired, Mr. Richardson's undisputed testimony was that the parties orally agreed to operate on a month to month basis under the expired lease's terms. Thus, the trial judge was correct in ruling the Partnership had no duty to maintain the entrance steps under *Byerly* and the terms of the lease.

The Creightons also argue the Partnership voluntarily undertook the duty to maintain the entrance steps by hiring D & M to perform the landscaping and maintenance at Coligny Plaza. A person who voluntarily undertakes to perform an act must use due care in the performance of that act. *Roundtree Villas Ass'n. v. 4701 Kings Corp.*, 282 S.C. 415, 321 S.E.2d 46 (1984); *Salvo v. Hewitt, Coleman & Assocs.*, 274

---

**3.** Section 10 of the lease provides that the lessor is charged with maintaining the common areas within the Shopping Center. Section 1(e) defines "common areas" as those "portions of the Shopping Center which have ... been designated and improved for common use by or for the benefit of more than one occupant of the Shopping Center; ... but excluding all portions of the Shopping Center which are used or intended for use by one occupant,...." Beverly Wilburn admitted in her testimony that the entrance steps were for the use of only one occupant, Rainbow's End.

Section 8.02 provides that the lessee "shall at all times keep the Premises, including, but not limited to, the maintenance of exterior entrances, ... in good order, condition, and repair including reasonable periodic painting as may be required, and including replacement of units to the extent necessary."

Section 8.07 provides that the lessee "shall keep the Premises and the walks adjacent thereto at all times in a neat, clean, and sanitary condition, free from waste or debris and shall neither commit nor permit any waste or nuisance thereon."

**4.** The expiration of the lease was not an issue raised before the trial court. However, it is clear in the record that the lease had expired prior to the date of Ms. Creighton's fall.

S.C. 34, 260 S.E.2d 708 (1979); *Crowley v. Spivey,* 285 S.C. 397, 329 S.E.2d 774 (Ct.App.1985). Furthermore, a lessor must use due care if he attempts to make premises safe. *Conner v. Farmers & Merchants Bank,* 243 S.C. 132, 132 S.E.2d 385 (1963).

D & M trimmed and maintained the palms and vines at the entrance steps to Rainbow's End pursuant to its contract with the Partnership. Mr. Richardson testified D & M was required to maintain the shrubs and bushes around the Rainbow's End building, and was responsible for all landscaping maintenance at Coligny Plaza. Thus, the Partnership voluntarily assumed a duty to maintain the entrance steps at Rainbow's End by hiring D & M to perform the landscaping and maintenance at Coligny Plaza.

However, the trial court ruled D & M was an independent contractor and the Partnership was not liable for any negligence by D & M in maintaining the entrance steps. Generally, an employer is not liable for the torts of an independent contractor. *Young v. Morrisey,* 285 S.C. 236, 329 S.E.2d 426 (1985); *Durkin v. Hansen,* 313 S.C. 343, 437 S.E.2d 550 (Ct.App.1993). No concrete rule has been established to determine whether the relationship of independent contractor has been established, but the general test is the degree of control exercised by the employer. *Fernander v. Thigpen,* 278 S.C. 140, 293 S.E.2d 424 (1982).

The South Carolina Supreme Court characterized the distinction between servants and independent contractors as follows:

It is not the actual control then exercised, but whether there exists the right and authority to control and direct the particular work or undertaking, as to the manner or means of its accomplishment. "An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer except as to the result of his work." 56 C.J.S. Master and Servant § 3(1); and "where one who performs work for another represents the will of that other, not only as to the result, but also as to the means by which the result is accomplished, he is not an

independent contractor but an agent; . . . ." 2 C.J.S. *Agency* § 2d.

*Young v. Warr,* 252 S.C. 179, 189, 165 S.E.2d 797, 802 (1969).

The Partnership had no direct control over how or when D & M did its work and no control over its daily work activities. Mr. David Westerland (Westerland), co-owner of D & M, supervised and directed the employees of D & M. The Partnership paid D & M $4,000.00 a month, and did not withhold social security or FICA. D & M had job sites other than Coligny Plaza. The Partnership did not furnish any equipment to D & M to perform the maintenance at the Plaza. The Partnership had no authority to hire or fire D & M employees. Westerland testified he never received instructions from the Partnership regarding maintenance of the area around Rainbow's End, and that the contract gave him discretion as to how to maintain the grounds. Periodically, the partners walked the grounds with Westerland and showed him specific things that needed to be done such as repairing potholes and replacing or moving shrubbery. Mr. Richardson would also communicate his satisfaction or dissatisfaction with D & M to Westerland. Nothing in the record indicates the Partnership controlled the manner or means that D & M used to accomplish the requested work. The trial court correctly ruled the Partnership was not liable for any negligence on the part of D & M in maintaining the palms and jasmine at the entrance steps to Rainbow's End because D & M was an independent contractor.[5]

The Creightons also argue the Partnership had a duty under the public use exception. However, this issue was not presented to and ruled on by the trial court; therefore, it is not properly preserved. *See Scoggins v. McClellion,* 321 S.C. 264, 468 S.E.2d 12 (Ct.App.1996).

---

5. One who hires an independent contractor to perform a nondelegable duty remains liable for the negligence of the independent contractor just as if the independent contractor were an employee. *Durkin,* 313 S.C. 343, 437 S.E.2d 550. This exception to the general rule of nonliability for the torts of an independent contractor was not presented to the trial court nor presented to this court on appeal. Thus, we do not reach the issue of whether the duty to maintain the entrance steps was a nondelegable duty for which the Partnership remained liable.

### Motion for Mistrial

■■■ The Creightons maintain the trial court erred in denying their motion for a mistrial.

■■■■ The granting of a motion for mistrial is within the sound discretion of the trial judge. *State v. Jones,* 325 S.C. 310, 479 S.E.2d 517 (Ct.App.1996). Absent an abuse of discretion, the decision of the trial judge will not be overturned on appeal. *Id.* The burden is upon the moving party to show not only error, but resulting prejudice. *State v. Wasson,* 299 S.C. 508, 386 S.E.2d 255 (1989).

The Creightons made a motion in limine to exclude any testimony regarding Ms. Creighton's pre-existing injuries or her prior automobile accident. The trial judge granted the motion. During Wilburn's testimony, she inadvertently made a statement about the prior automobile accident. At that point, the trial judge interrupted the witness and instructed her not to say anything further in that regard. The Creightons did not move to strike the testimony or request a curative instruction. At the lunch recess, the Creightons made a motion for a mistrial.[6]

The Creightons cannot show Wilburn's statement had any prejudicial effect in the liability phase of the trial. Any statement about the prior automobile accident was irrelevant to the issue of liability and pertained to damages alone. Thus, there was no abuse of discretion in the trial court's denial of the motion for a mistrial.

The Creightons also contend the trial court's jury instruction was confusing and contradictory because of the references to injuries. This issue is not preserved. The Creightons did not raise any objection to the jury instruction before the trial court and cannot now raise it for the first time on appeal.

---

6. The Creightons should have made a motion to strike the testimony or request a curative instruction, in addition to making a motion for a mistrial. *See State v. Watts,* 321 S.C. 158, 467 S.E.2d 272 (Ct.App. 1996) (appellant waived any objection to challenged testimony by rejecting court's offer to strike testimony or give curative instruction); *State v. McFadden,* 318 S.C. 404, 458 S.E.2d 61 (Ct.App.1995); *State v. Wingo,* 304 S.C. 173, 403 S.E.2d 322 (Ct.App.1991) (when witness gives objectionable testimony and objection is sustained, issue not preserved unless objecting party makes motion to strike testimony).

## Jury Charge

 The Creightons argue the trial court erred by instructing the jury as to contributory negligence and assumption of risk. The Creightons made no objection to the trial judge's jury instruction in regard to contributory negligence. Therefore, the issue is not preserved for appeal.

 The trial judge held a charge conference at the close of all the evidence. At the conference, the Creightons objected to a jury instruction on assumption of risk, alleging there was no evidence in the record to support the charge. The trial judge informed the parties he would charge assumption of risk. The Creightons failed to renew their objection after the charge was given to the jury. Therefore, this issue may not be preserved. *See State v. Whipple*, 324 S.C. 43, 476 S.E.2d 683 (1996); Rule 51, SCRCP. However, as previously discussed, there was sufficient evidence in the record to submit the defense of assumption of risk to the jury.

### Dismissal of Loss of Consortium Claim

 The Creightons maintain the trial court erred in dismissing the loss of consortium claim at the conclusion of the liability trial.

 "Under South Carolina law, unlike that of some other states, loss of consortium is an independent action, not derivative." *Preer v. Mims*, 323 S.C. 516, 521, 476 S.E.2d 472, 474 (1996). A verdict for a defendant in the injured party's action does not bar the loss of consortium claim. *See Page v. New Lower Richland Med. Ctr.*, 291 S.C. 82, 352 S.E.2d 295 (Ct.App.1986).

At the conclusion of the liability trial, the trial judge entered judgment reflecting the jury verdict for the defendants and simultaneously dismissed the loss of consortium claim by order "because of a defendant verdict on companion case." Although the trial judge's order dismissing the loss of consortium claim misstates the law, we find the order to be mere surplusage because the action was consolidated for trial with the liability action by consent of the parties.

 Under Rule 42(a), SCRCP, a trial judge may order the consolidation of actions involving a common question of

law or fact. However, even before the enactment of Rule 42(a), cases could be tried together for convenience with the consent of all parties. *See McKinney v. Greenville Ice & Fuel Co.*, 232 S.C. 257, 101 S.E.2d 659 (1958).

Although there was no formal order of consolidation, we find all parties consented to trying the negligence and loss of consortium actions simultaneously. Other than the pleadings, all documents, motions, and correspondence the Creightons' attorney filed with the court in relation to the trial referenced both case captions and civil action numbers.

During jury *voir dire*, the trial judge told the jury panel, "[T]he plaintiff in this case is named Cecilia Creighton. She's brought an action and her husband has also brought an action." In his preliminary remarks, the trial judge also stated, "[T]he plaintiff has the burden of proving her claims in this case, her claims and his claims, we have two cases here. The plaintiffs will call their witnesses first."

Before the charge conference, the trial judge went over the verdict form with all counsel. When the trial judge published the jury verdict, he stated, "Okay, in the case of Cecilia Creighton, plaintiff, versus Coligny Plaza, et al., case number 93–CP–07–1211, and that also includes the other case, the verdict is we find for the defendants...." [7]

The Creightons' attorney never objected to the trial judge's characterization of the trial as including both cases. In fact, counsel for the Creightons told the jury in his opening statements that he "represent[ed] the Plaintiffs, Cecilia and Robert Creighton ..." The Creightons also failed to object to the form of the jury verdict when the trial judge indicated it included both actions.

■■■ The Creightons assert the trial judge's bifurcation of the trial necessitated a separate trial for loss of consortium. They contend it was impossible to have tried the loss of consortium claim because such claims concern damages. We disagree.

---

7. The judge's order in the negligence action was not made a part of the record. Therefore, we cannot consider the order for purposes of appeal. *See Crestwood Golf Club, Inc. v. Potter*, 328 S.C. 201, 493 S.E.2d 826 (1997).

Although a loss of consortium claim is not res judicata because of a defendant's verdict in a negligence action,[8] "a loss of consortium claim cannot arise if no tort is committed against the impaired spouse." 41 Am.Jur.2d *Husband and Wife* § 250 (1995). In order to prevail in an action for loss of consortium, a plaintiff must prove the defendant's liability for the spouse's injuries, as well as damages to the plaintiff resulting from the spouse's injury. *Id.*

In this case, the only issue during the two day trial was defendants' liability for Ms. Creighton's slip and fall. This determination was a prerequisite to recovery in both the negligence and loss of consortium cases. In both cases, the same facts, evidence, defenses, and legal arguments would support the jury's determination. Bifurcation of the issue of liability does not preclude trying the two cases simultaneously.

Furthermore, the Creightons' actions after the trial judge ordered bifurcation contradicts their assertion that they believed the loss of consortium case would be tried separately. Four days before the trial, the Creightons filed and served an amended list of the evidence and exhibits to be used in the trial. The document states, "[P]laintiffs hereby designate the following matters to be used as evidence or exhibits in the trial of the above cases." This document clearly refers to both cases and both plaintiffs, but references only one trial. Furthermore, the Creightons' conduct during the trial, previously discussed, evidences a knowledge and intent to try both cases simultaneously. Accordingly, we hold both actions were consolidated and tried together by consent of the parties, and the verdict rendered was for the loss of consortium claim, as well as the negligence action.

### Dismissal of Discovery Abuse Motions

The Creightons argue the trial court erred in failing to rule on their motions for discovery abuse and dismissing the motions as moot at the conclusion of the liability trial.

A trial judge's ruling on discovery matters will not be disturbed on appeal absent an abuse of discretion. *Dunn v. Dunn*, 298 S.C. 499, 381 S.E.2d 734 (1989); *Hook v.*

8. *See Priester v. Southern Ry. Co.*, 151 S.C. 433, 149 S.E. 226 (1929).

*Rothstein,* 281 S.C. 541, 316 S.E.2d 690 (Ct.App.1984). The burden is on the appealing party to demonstrate that the trial court abused its discretion. *Dunn,* 298 S.C. 499, 381 S.E.2d 734. A reviewing court may find abuse of discretion where an appellant shows that the lower court's conclusion is based upon an error of law or without evidentiary support. *Fontaine v. Peitz,* 291 S.C. 536, 354 S.E.2d 565 (1987). "When a trial judge is vested with discretion, but his ruling reveals no discretion was, in fact, exercised, an error of law has occurred." *Id.* at 538, 354 S.E.2d at 566. If a court has discretionary authority, but rules as a matter of law, the matter should be reconsidered and passed on as a discretionary matter. *Id.*

Based upon our understanding of the record, the Creightons filed two motions for discovery protection and costs pursuant to Rules 26 and 30, SCRCP.[9] The trial judge held a pre-trial hearing at which he denied all discovery motions except those pertaining to damages. However, the trial judge reserved ruling on these motions. After a verdict was entered in favor of the defendants in the liability phase of the trial, the trial judge dismissed the remaining discovery abuse motions as moot. We agree with the Creightons that the trial court erred in finding the remaining discovery motions were moot.

Although there is no South Carolina precedent dispositive of this issue, federal case law indicates discovery abuse motions do not become moot when a case is terminated.[10] *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 396, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) ("[L]ike the imposition of costs, attorney's fees, and contempt sanctions, a Rule 11 sanction is not a judgment on the action's merits, but simply requires the determination of a collateral issue, which may be made after the principal suit's termination."); *Roadway Exp., Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (after case dismissed pursuant to 28 U.S.C. § 1927 and Rule

---

**9.** Under Rules 26 and 30, a court may award expenses in accordance with Rule 37(a)(4), FRCP.

**10.** The language of Rule 37, SCRCP, is the same language as the Federal Rule with minor alterations. SCRCP Rule 3 notes (1998). The differences in the Federal Rule and South Carolina's are not relevant to this issue.

37, FRCP, Court remanded case to district court for determination of 37(b) motion for costs and attorney's fees); *Hedrick v. Comptroller of Currency, Washington, D.C.*, 68 F.3d 477, 477 (7th Cir.1995) ("dismissal of the underlying case alone does not moot the question of Rule 11 sanctions"); *Heinrichs v. Marshall and Stevens, Inc.*, 921 F.2d 418 (2d Cir.1990) (affirming district court award of Rule 37 sanctions subsequent to a grant of summary judgment); *Mercy v. Suffolk County, New York*, 748 F.2d 52, 56 (2d Cir.1984) ("The sanctions provided in the Federal Rules of Civil Procedure are designed to prevent any litigant, whether or not he ultimately prevails, from being put to discovery expense that is unjustified."); *Penthouse International, Ltd. v. Playboy Enter., Inc.*, 663 F.2d 371 (2d Cir.1981) (case remanded to district court for determination of Rule 37 sanctions despite complaint's dismissal); *Merritt v. International Bro. of Boilermakers*, 649 F.2d 1013 (5th Cir.1981) (interpreting *Roadway Express* as implicit recognition of district court's authority to assess attorney's fees and discovery expenses under Rule 37 post-judgment).

 The record reflects the trial judge's disagreement with defense counsels' conduct during some depositions. At the hearing, the trial judge indicated he would consider ordering the defendants to pay the costs of bringing the out of state doctors in to testify concerning damages if the Creightons obtained a favorable verdict at the liability trial. Obviously, after a defendants' verdict was entered at the liability trial, this alternative was no longer available. However, the unavailability of a proposed sanction does not moot the issue of discovery abuse itself.

 Additionally, the trial judge's failure to rule on all the Creightons' discovery abuse allegations contravenes the policies underlying the Rule's enactment. Discovery sanctions are imposed "to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent." *Karppi v. Greenville Terrazzo Co.*, 327 S.C. 538, 545, 489 S.E.2d 679, 683 (Ct.App.1997) (quoting *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)). If defendants' counsel has

taken action warranting sanctions, dismissing the issue without ruling on its merits allows them to go unpenalized. Such action also decreases the likelihood of others being deterred from similar misconduct. Therefore, we find the trial judge erred in failing to rule on the remaining discovery abuse motions and remand the case for disposition of these issues. In so doing, we express no opinion as to the merits of the remaining allegations of discovery abuse.

### Management of Trial

The Creightons argue the trial court's management of the trial was so prejudicial as to warrant reversal.

The Creightons contend the trial judge should have informed the jury that Ms. Creighton suffered substantial damages as a result of the slip and fall. On a few occasions, the trial judge said he would tell the jury Ms. Creighton suffered substantial damages. Although the trial judge probably should have mentioned this fact as he indicated he would, we find no abuse of discretion in the failure to mention substantial damages. In fact, the jury was aware Ms. Creighton suffered substantial damages because counsel for the Creightons mentioned it in his opening statement.

The Creightons argue defense counsel's behavior during the trial was prejudicial. This issue was not raised to the trial court; thus, it is not preserved for review on appeal.

The Creightons maintain the trial court's failure to allow recross examination of witnesses constituted reversible error. This issue was not raised below and cannot be raised for the first time on appeal.

The order of the trial judge is affirmed, with the exception of the unresolved discovery abuse issues. We remand the case to the trial judge for disposition of the remaining discovery allegations.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

CONNOR and STILWELL, JJ., concur.