**Margarito Echeverria PATINO,
Plaintiff,**

v.

**CAPITAL BONDING CORPORATION; Harco National Insurance Company; Justice Bail Bonds, Inc.; Chrystal S. Hall; Lawrence Donta Wilson; and unknown John Doe individual, Defendants.**

**C.A. No. 2:05–01842–PMD.**

United States District Court, D. South Carolina, Charleston Division.

Oct. 19, 2006.

Paul H. Hulsey, Hulsey Litigation Group, Charleston, SC, for Plaintiff.

Anne Louise Ross, Lydia Blessing Applegate, Marvin DeWitt Infinger, Haynsworth Sinkler Boyd, Joseph Francis Runey, Charleston, SC, Kenneth Peter Andresen, Andresen and Associates, Charlotte, NC, for Defendants.

## *ORDER*

DUFFY, District Judge.

This matter is before the court upon Defendant Harco National Insurance Company's ("Harco" or "Defendant") motion for summary judgment. For the reasons set forth herein, the court denies Defendant Harco's motion.

## *BACKGROUND*

The facts, considered in the light most favorable to the nonmoving party, are as follows:

Harco is an insurance company that offers various insurance products throughout the United States. (Affidavit of David G. Pirrung ¶ 3.) Capital Bonding Corporation ("Capital Bonding") sold bonds in numerous jurisdictions throughout the United States from the 1990s until the spring of 2004. (Affidavit of David G. Pirrung ¶ 4.) As the bonds sold by Capital Bonding are considered insurance, it needed an insurance company licensed in the states where

the bonds were to be sold in order to sell them. (Affidavit of David G. Pirrung ¶ 5.) Harco and Capital Bonding Corporation thus entered into a Program Administrator Agreement ("PAA") on January 1, 2003. Pursuant to that agreement,

> [Harco] appoint[ed] [Capital Bonding] as its general agent ... for the business specified herein and for the following purposes: To solicit applications for Federal and State Criminal Court Bail Bonds ...; to receive, evaluate, reject and accept requests for such Bonds; to underwrite, bind and issue Bonds in accordance with [Harco's] underwriting guidelines ...; and to charge and collect payments for such Bonds in accordance with the terms and conditions of such Bonds and the [PAA].

(Plaintiff's Exhibit A at 1.) The PAA further stated, "[Capital Bonding] shall, at all times, act as an independent contractor. Nothing contained herein shall be construed to create an employer/employee relationship between ... [Harco] and [Capital Bonding]." (Plaintiff's Exhibit A at 1, ¶ 4.)

On May 21, 2004, Harco and Capital Bonding signed Addendum D, which provides in part,

> *Transfer of Management Authority.* Contemporaneous with the execution of this Addendum, [the director of Capital Bonding] ... has appointed representatives of [Harco] (as designated by [Harco] and its reinsurers) to replace [the director] ... and all other current officers of [Capital Bonding] in order that they may manage all aspects of [Capital Bonding's] business operations.

(Plaintiff's Exhibit A at p. 30, ¶ 2.) Harco and Capital Bonding entered into this addendum for several reasons:

> [Capital Bonding] has been suffering financial difficulties as a result of its own actions, is currently in default under several provisions of the PAA, has called

upon [Harco] and other carriers and reinsurers for assistance, both financial and operational, and has received such assistance from [Harco] and others in their efforts to accommodate [Capital Bonding] and protect the beneficiaries of the bonds written by [Capital Bonding];
> ...
> [The agreement is entered into] in order to (a) protect its and its reinsurers' significant investments; (b) minimize their increasing liability exposure; (c) protect the bond beneficiaries, future bail bond purchasers and the general public from the negative ramifications that may occur as a result of [Capital Bonding's] actions ...

(Plaintiff's Exhibit A at p. 29, ¶¶ 2, 4.)

Addendum D further modified the relationship between Harco and Capital Bonding. The addendum states that Harco "is compelled to take prompt action to exercise the voting rights of the majority shareholders' stock in [Capital Bonding]." (Plaintiff's Exhibit A at p. 29, ¶ 4.) In addition, the previous director of Capital Bonding, Vincent J. Smith ("Smith"), was not allowed "to be present at the offices of [Capital Bonding] without prior approval of the Acting President of ... [Capital Bonding]." (Plaintiff's Exhibit A at p. 30, ¶ 3.) Smith, as the owner of Capital Bonding's business premises, agreed not to eject Harco or any of the new acting officers from Capital Bonding's premises. (Plaintiff's Exhibit A at p. 31, ¶ 10.) The addendum also provided that only Harco could modify or terminate the PAA. (Plaintiff's Exhibit A at p. 31, ¶ 8.)

On December 17, 2004, the Honorable Gary L. Locklear of the General Court of Justice, Superior Court Division of Robeson County, North Carolina, entered a bond forfeiture notice against Emmanuel Echeverria Patino for his failure to appear on December 6, 2004. On February 22,

2005, Lawrence Donta Wilson ("Wilson") and John Doe ("Doe") arrived at the home of Margarito Echeverria Patino, Plaintiff, forcibly seizing him and taking him to the Robeson County Detention Center in Lumberton, North Carolina. Plaintiff was incarcerated for approximately six days, until a family friend was able to convince the local District Attorney's Office that the recovery agents[1] arrested the wrong person. Plaintiff filed suit against Capital Bonding, Harco, Justice Bail Bonds, Inc., Chrystal S. Hall, Wilson, and Doe for false arrest and imprisonment, assault and battery, intentional infliction of emotional distress, negligence, and trespass. (Plaintiff's Complaint at 8–13.) Harco filed a motion for summary judgment, asserting it is not vicariously liable for the actions of Wilson and Doe.

### STANDARD OF REVIEW

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, af-

ter adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "obligation of the nonmoving party 'is particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548.

### ANALYSIS

■ "Agency is a fiduciary relationship which results from the manifestation of consent by one person to another to be subject to the control of the other and to act on his behalf." *Peoples Fed. Savs. & Loan Ass'n v. Myrtle Beach Golf & Yacht Club*, 310 S.C. 132, 145, 425 S.E.2d 764, 773 (Ct.App.1992) (citing RESTATEMENT (SECOND) OF AGENCY § 1 (1958)). Because the relationship is based on consent, a principal can limit an agent's authority. *See Winship v. Bank of U.S.*, 30 U.S. 529, 561, 5 Pet. 529, 8 L.Ed. 216 (1831); *see also Fender v. N.Y. Life Ins. Co.*, 158 S.C. 331, 155 S.E. 577, 584 (1930). Under South Carolina law, "[t]he test to determine agency is whether or not the purported principal has the *right to control* the conduct of his alleged agent." *Fernander v. Thigpen*, 278 S.C. 140, 144, 293 S.E.2d 424, 426 (1982).[2]

---

**1.** "Recovery agents are persons engaged in the business of investigating, locating, apprehending, and surrendering individuals who are fugitives from justice." (Affidavit of David G. Pirrung ¶ 11.)

**2.** The test enunciated in *Fernander* has been cited as the test to determine whether the relationship established is that of an independent contractor or a servant. *See Creighton v. Coligny Plaza Ltd. P'ship*, 334 S.C. 96, 116, 512 S.E.2d 510, 520 (Ct.App.1998).

Generally speaking, a principal is subject to vicarious liability[3] for the torts of a servant but not for the torts of an independent contractor. *See Rock Hill Tel. Co. v. Globe Commc'ns, Inc.,* 363 S.C. 385, 390, 611 S.E.2d 235, 238 (2005); *Creighton v. Coligny Plaza Ltd. P'ship,* 334 S.C. 96, 116, 512 S.E.2d 510, 520 (Ct. App.1998); *see also* RESTATEMENT (SECOND) OF TORTS § 409 (1965) ("Except as stated in §§ 410–429, the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants."). However, an employer may not avoid liability simply by using the label "independent contractor." *See Beasley v. Kerr–McGee Chem. Corp.,* 273 S.C. 523, 526, 257 S.E.2d 726, 727 (1979) ("It is well established that the terms of a contractual agreement are not conclusive in determining the association between two parties where there is evidence outside the contract establishing an agency relationship. 'It is not the descriptive name employed, but the nature of the business and the extent of authority given and exercised, which is determinative.'" (quoting *Jones v. General Motors Corp.,* 197 S.C. 129, 14 S.E.2d 628, 631 (1941) (citations omitted))). "If there are any facts tending to prove an agency relationship, the question is one for the jury." *Gamble v. Stevenson,* 305 S.C.

104, 108, 406 S.E.2d 350, 352 (1991) (citation omitted).

In this case, Plaintiff argues summary judgment is improper because the "facts concerning the relationship are clearly in controversy." (Plaintiff's Memorandum in Opposition at 8.) Plaintiff argues Capital Bonding "was an agent for Harco making Harco liable for the torts against Plaintiff." (Plaintiff's Memorandum in Opposition at 7.)[4] The fact that Capital Bonding was an agent for Harco, however, is not sufficient to impose vicarious liability on Harco. *See Rock Hill Tel. Co.,* 363 S.C. at 390, 611 S.E.2d at 238; *Creighton,* 334 S.C. at 116, 512 S.E.2d at 520. For vicarious liability to attach, Plaintiff must demonstrate Harco had the right to control Capital Bonding such that Capital Bonding was Harco's servant.[5] *See Caldwell v. Carroll,* 139 S.C. 163, 137 S.E. 444, 450 (1927) (quoting *Conlin v. City Council of Charleston,* 49 S.C.L. (15 Rich.) 201 (1868)). Furthermore, Harco does not seem to dispute that Capital Bonding was its agent; Harco rather argues that "Capital Bonding is not Harco's agent for the purposes of engaging the services of recovery agents." (Defendant's Memorandum in Support at 7.)

Plaintiff argues that because Harco took over the management of Capital Bonding, Harco is subject to liability for the torts of Capital Bonding's recovery agents.[6]

**3.** Vicarious liability is defined as "[l]iability that a supervisory party (such as an employer) bears for the actionable conduct of a subordinate or associate (such as an employee) because of the relationship between the two parties." *In re Anonymous Member of the S.C. Bar,* 346 S.C. 177, 183 n. 3, 552 S.E.2d 10, 12 n. 3 (2001) (quoting BLACK'S LAW DICTIONARY 927 (7th ed.1999)).

**4.** This court does not address Plaintiff's argument that Harco is liable as a bail bondsman because it finds summary judgment is improper based on the general principles of agency law.

**5.** Harco cites *Young v. Warr,* 252 S.C. 179, 165 S.E.2d 797 (1969) for the factors that a court should consider in determining whether the right to control exists. These factors are (1) the contract between the alleged agent and the alleged principal, (2) direct evidence of the right or exercise of control, (3) method of payment, (4) furnishing of equipment, and (5) the right to fire. *See Young,* 252 S.C. 179, 165 S.E.2d 797; *see also Spivey v. D.G. Constr. Co.,* 321 S.C. 19, 21, 467 S.E.2d 117, 119 (Ct.App.1996). Although all of these factors do not appear to come from *Young,* this court will refer to these factors as the *Young* factors.

**6.** Plaintiff cites *Peoples Federal Savings &*

(Plaintiff's Memorandum in Opposition at 7–9.) Plaintiff states, "Harco assumed responsibility for the functions that Capital [Bonding] previously performed and was statutorily obligated to perform, which included controlling and directing recovery agents ..." (Plaintiff's Memorandum in Opposition at 8.)

Although Plaintiff does not put forth evidence showing that Harco actually controlled the recovery agents, Plaintiff has presented a genuine issue of material fact as to whether Harco had the right to control the recovery agents by demonstrating that Harco took over the management of Capital Bonding. Plaintiff produced evidence that Capital Bonding transferred its management authority to Harco so that Harco "may manage all aspects of [Capital Bonding's] business operations." (Plaintiff's Exhibit A at p. 30, ¶ 2.) Plaintiff also produced evidence that only Harco could modify or terminate the PAA and that Smith, Capital Bonding's former director, was not even allowed on Capital Bonding's premises without Harco's permission. (Plaintiff's Exhibit A at p. 30–31, ¶¶ 3,8.)[7] Defendant produced evidence in the form of an affidavit to show that Harco was not responsible for paying recovery agents, did not have the right to fire or discipline recovery agents, and did not have the right to control or participate in the hiring of recovery agents. (Affidavit of David G. Pirrung ¶¶ 12, 13, 16.) Plaintiff and Defendant dispute whether Harco had the right to control Capital Bonding with respect to the activities of recovery agents. As the right to control is the key factor in determining whether Harco is vicariously liable for the acts of Capital Bonding's recovery agents, summary judgment is improper.

### CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Defendant Harco's motion for summary judgment is **DENIED.**

**AND IT IS SO ORDERED.**

Loan Association v. *Myrtle Beach Golf & Yacht Club*, 310 S.C. 132, 425 S.E.2d 764 (Ct.App.1992), for the proposition that a person taking over the management of a business becomes a principal. The fact that Harco took on some management responsibility, however, is not determinative. The key is to determine whether Harco had the right to control Capital Bonding. *See Peoples Federal Savings & Loan Association*, 310 S.C. at 146–47, 425 S.E.2d at 773 ("A security holder who merely exercises a veto power over the business acts of his debtor by preventing purchases or sales above specified amounts does not thereby become a principal. However, if he takes over management of the debtor's business ... and directs what contracts may or may not be made, he becomes a principal, liable as any principal for the obligations incurred thereafter in the normal course of business by the debtor who has now become his general agent. The point at which the creditor becomes a principal is that at which he assumes *de facto* control over the conduct of his debtor, whatever the terms of the formal contract with his debtor may be." (quoting RESTATEMENT (SECOND) OF AGENCY § 14(O) cmt. a (1958))).

7. Plaintiff has thus produced evidence of the *Young* factors sufficient to preclude summary judgment. *See supra* note 5.