745 S.E.2d 405

**Jane CHERRY, Personal Representative of the Estate of Nicholas Wayne Cherry, Appellant,**

v.

**MYERS TIMBER COMPANY, INC., Respondent.**

**Taylor C., a minor under the age of 14 years, by and through mother and natural guardian, Jane Cherry, Appellant,**

v.

**Myers Timber Company, Inc., Respondent.**

**Carlton Quinton as Personal Representative of the Estate of Hannah Nicole Quinton, Deceased, Appellant,**

v.

**Myers Timber Company, Inc., Respondent.**

**Alice Quinton and Carlton Quinton, Appellants,**

v.

**Myers Timber Company, Inc., Respondent.**

**Carlton Quinton as Guardian for Timothy Q., a Minor under the Age of Eighteen, Appellant,**

v.

**Myers Timber Company, Inc., Respondent.**

**Appellate Case No. 2012–207686.**

**No. 5153.**

Court of Appeals of South Carolina.

Heard May 8, 2013.

Decided July 3, 2013.

Larry Dale Dove and David Lamar Little, both of Dove & Barton, LLC, of Rock Hill, for Appellant Jane Cherry.

David Bradley Jordan, of Jordan & Dunn, LLC, of Rock Hill, for Appellants Carlton Quinton and Alice Quinton.

Forrest C. Wilkerson, IV, of Rock Hill, for Respondent.

KONDUROS, J.

In this appeal arising out of wrongful death, survival, and negligence actions, Appellants[1] challenge the circuit court's grant of Myers Timber Company's summary judgment motion. They argue they presented sufficient evidence to raise a jury question as to whether Levister Logging was an employee of Myers and not an independent contractor. We affirm.

**FACTS**

Myers entered into timber harvesting contracts with landowners under which it would arrange for a third party to cut timber from the landowner's property and haul it to mills that

---

1. Appellants are Jane Cherry, as personal representative of the Estate of Nicholas Wayne Cherry; Taylor C., by and through her guardian, Jane Cherry; Carlton Quinton as personal representative of the Estate of Hannah Nicole Quinton; Alice Quinton and Carlton Quinton; and Carlton Quinton as guardian for Timothy Q.

purchased the timber. Myers did not own any log trucks or equipment and hired logging companies to fulfill its duties. After being hired for a job on thirteen acres of land in Lancaster County, Myers hired Levister to cut and remove timber from the land. The agreement between Myers and Levister was oral. The terms of the agreement were the rates [2] Myers would pay Levister for harvesting and hauling the lumber to the mills Myers identified. Levister decided what equipment to use and how to set up its equipment at the site. The agreement was terminable at will by either party.[3]

Myers would send one of its employees to a site at times to make sure the crew had not cut any trees on other property and was keeping the property neat, but the employee would not remain on site. On March 26, 2007, an employee of Myers was on site while one of Levister's trucks, a tractor-trailer rig, was being loaded with cut logs. Myers and Levister learned the mill where they had planned to send the logs was shut down. One of Levister's employees, George Rogers, was to drive the log truck and wanted to take the logs to Bowater Mill. Instead, one of Myers's employees instructed him to take the logs to Chester Wood Mill in Chester County. However, the logs that had already been loaded onto the truck had to be cut to conform to the log size requirements at Chester Wood Mill.

Once the logs were loaded, Rogers began driving the truck towards the Chester Wood Mill. The truck approached an intersection with a traffic light. At the same time, Alice Quinton, who had just picked up her two children and their two friends from elementary school, was stopped at the intersection in her van. Quinton drove her van into the intersection, where Roger's truck ran into the driver's side of it.

---

**2.** Myers paid Levister an agreed amount per ton of wood it cut and loaded onto its truck as well as mileage to and from the mill. The drivers were allowed to take any route they chose, but the rate was calculated based on the shortest route.

**3.** Myers disputes this in its respondent's brief. However, the circuit court made this finding, and Myers did not file an appeal challenging it. Accordingly, it is the law of the case. *See Ulmer v. Ulmer*, 369 S.C. 486, 490, 632 S.E.2d 858, 861 (2006).

Tragically, two of the children were killed and the other occupants of the van were seriously injured.[4]

Appellants brought wrongful death, survival, and negligence actions against Myers alleging it was vicariously liable for Rogers's and Levister's negligence. Myers answered, asserting Levister was an independent contractor and thus denying it was vicariously liable. Myers filed a motion for summary judgment. Following a hearing, the circuit court granted the motion for summary judgment, finding Levister was an independent contractor of Myers and thus Myers was not liable for the acts of Levister's employees. The circuit court found (1) Myers had no right to exercise control over Levister; Levister could harvest the timber and transport it in any manner it saw fit; (2) Levister was not paid a wage or salary but instead was paid based on the end result, the amount of timber delivered; (3) Levister furnished all of its own equipment; and (4) Myers had no right to hire or fire Levister's employees. This appeal followed.

## STANDARD OF REVIEW

The purpose of summary judgment is to expedite the disposition of cases not requiring the services of a fact finder. *George v. Fabri*, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). When reviewing the grant of a summary judgment motion, this court applies the same standard that governs the trial court under Rule 56(c), SCRCP; summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). In determining whether a genuine issue of fact exists, the evidence and all reasonable inferences drawn from it must be viewed in the light most favorable to the nonmoving party. *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 404, 581 S.E.2d 161, 165 (2003).

## LAW/ANALYSIS

■ Appellants argue the circuit court erred in granting Myers's motion for summary judgment by finding Levister was an independent contractor and not an employee. Specifi-

---

4. Rogers was acquitted on charges of reckless homicide following a trial in 2009.

cally, Appellants contend the circuit court erred in (1) finding Myers had no right or power to control or direct the manner or performance of Levister's work; (2) finding Myers had no right to fire Levister's personnel; (3) failing to find Myers's right to exercise control over material elements of payments to Levister created a genuine issue of material fact; and (4) failing to find Myers's right to use and exercise control over Levister's use of equipment created a genuine issue of material fact. We disagree.

 "Generally, an employer is not liable for the torts of an independent contractor. No concrete rule has been established to determine whether the relationship of independent contractor has been established, but the general test is the degree of control exercised by the employer." *Creighton v. Coligny Plaza Ltd. P'ship*, 334 S.C. 96, 116, 512 S.E.2d 510, 520 (Ct.App.1998) (citations omitted). The distinction between employees and independent contractors is not the actual control exercised, but whether there is the right and authority to control and direct the particular work or undertaking, as to the manner or means of its accomplishment. *Id.* at 116, 512 S.E.2d at 520–21. "An independent contractor ... contracts to do a piece of work according to his own methods, without being subject to the control of his employer except as to the result of his work." *Id.* at 116, 512 S.E.2d at 521 (internal quotation marks omitted).

> The Courts have encountered much difficulty in determining whether under various circumstances a person doing work for another was an employee or an independent contractor. It is generally recognized that it is impossible to formulate a fixed or absolute rule applicable to all cases and that each must be determined on its own facts. However, there are many well recognized and fairly typical indicia of the status of independent contractor, even though the presence of one or more of them in a case is not necessarily conclusive.

*Norris v. Bryant*, 217 S.C. 389, 398, 60 S.E.2d 844, 847 (1950). Courts have recognized four factors bearing on the right of control: (1) direct evidence of the right to, or exercise of, control; (2) method of payment; (3) furnishing of equipment; and (4) right to fire. *Chavis v. Watkins*, 256 S.C. 30, 32, 180 S.E.2d 648, 649 (1971).

In *Creighton,* Partnership hired D & M to do landscaping at a shopping center, Coligny Plaza, it owned. 334 S.C. at 107, 512 S.E.2d at 516. A shopper fell on the entrance steps to one of the stores, which had two large palm trees with limbs overhanging the handrails on each side. *Id.* at 106–07, 512 S.E.2d at 515. Additionally, a vine "was growing along the outer edge of some of the steps and was intertwined with portions of the handrails." *Id.* at 107, 512 S.E.2d at 516. This court found:

> The Partnership had no direct control over how or when D & M did its work and no control over its daily work activities.... [C]o-owner of D & M[ ] supervised and directed the employees of D & M. The Partnership paid D & M $4,000.00 a month, and did not withhold social security or FICA. D & M had job sites other than Coligny Plaza. The Partnership did not furnish any equipment to D & M to perform the maintenance at the Plaza. The Partnership had no authority to hire or fire D & M employees. [Co-owner] testified he never received instructions from the Partnership regarding maintenance of the area around [where the shopper fell], and that the contract gave him discretion as to how to maintain the grounds. Periodically, the partners walked the grounds with [co-owner] and showed him specific things that needed to be done such as repairing potholes and replacing or moving shrubbery. [One of the partners] would also communicate his satisfaction or dissatisfaction with D & M to [co-owner]. Nothing in the record indicates the Partnership controlled the manner or means that D & M used to accomplish the requested work. The trial court correctly ruled the Partnership was not liable for any negligence on the part of D & M in maintaining the palms and jasmine at the entrance steps ... because D & M was an independent contractor.

*Id.* at 117, 512 S.E.2d at 521.

In *Norris,* 217 S.C. at 395, 398, 60 S.E.2d at 846, 847, our supreme court found a logging contract somewhat similar to one in this case created the relationship of independent contractor between Poinsett Lumber and Manufacturing Company, a company that owned timber land in different locations, and S.C. Grant, who cut the timber on one area of Poinsett's

land and hauled it to a mill.[5] The court found Grant owned logging equipment and engaged in that business. *Id.* at 398, 60 S.E.2d at 847.

He contracted to cut and haul a large quantity of logs at a fixed price. The operation was to cover a period of over two years. Poinsett had no right to terminate the contract as long as Grant fulfilled the conditions and requirements set forth therein. Grant was to furnish his own equipment and to pay all employees and subcontractors engaged by him. He had the right to control and direct the manner in which the details of the work were to be executed. Poinsett reserved no control over Grant's employees. Grant was to produce a given result and was to determine the means by which such result was to be accomplished.

*Id.* The court also noted, "Hauling contracts of a similar nature have also been held to create the relation of employer and independent contractor in other jurisdictions." *Id.* at 399, 60 S.E.2d at 847. The court found "it is clear from a consideration of the entire contract that the general direction and supervision reserved to Poinsett related only to the result to be attained and not to the details of the operation." *Id.* at 399, 60 S.E.2d at 848.

In this case, the circuit court correctly granted summary judgment. Appellants did not present evidence Myers had control over Levister. Levister could harvest the timber how it wanted, owned all of the equipment, and was paid based on the end result. Myers could not directly fire Levister's employees, and Levister paid its own employees, including withholding taxes. Myers's being able to tell Levister it was leaving too much stump or leaving ruts in the ground is similar to *Creighton* in which the partnership would give D & M specific instructions of what needed attention. The arrangement here is also like the one in *Norris* between Poinsett and Grant. Accordingly, the circuit court did not err in granting Myers summary judgment by finding the only evi-

---

5. The court found it was for the jury to determine whether the relationship between Grant and *his* employee was that of an independent contractor. *Id.* at 405, 60 S.E.2d at 850.

dence was that Levister was an independent contractor. Therefore, the circuit court's decision is

**AFFIRMED.**

HUFF and WILLIAMS, JJ., concur.